Chief Justice Robertson
delivered the Opinion of the Court.
Br the will of John Walker, who died in 1800, his executors were authorized (according to a proper construetion of the whole will,) to lease, or sell, a tract of land, of one hundred and fifty acres, on which he resided.
This tract he had bought from Alexander Montgomery, whose bond for a title he held ; but who had, without his (the testator’s) knowledge, and during his last illness, made to him a conveyance.
Seventy three pounds of the consideration remained clue to Montgomery, at, the death of Walker.
*248 On tli e 15th of November, 1800, the executor and executrix sold the land, by executory contract, to Master-.son Ogden, for the price which Walker had agreed to pay Montgomery, that is, one hundred and eighty pounds, and delivered to him the possession.
By the written contract, signed by Ogden, as well as by the vendors, it was agreed, that he should pay, fify pounds in four months, and at the time of such payment, execute his note for “ fifty seven pounds, on interest, and likewise discharge the bond due to Montgomery for seventy three pounds, when he makes a good title to the said land that when Ogden paid the fifty pounds, and gave his note for fifty seven pounds, the vendors should make him a good title, and also assign him the bond on Montgomery ; that if Ogden should pay the fifty pounds, and execute his note for the fifty seven pounds, according to the contract, and thereupon should not receive a conveyance and an assignment of the bond, he should retain the possession and use of the land until the conveyance and assignment should be made, “ by paying the use of the whole money that said Walker paid to the said Montgomery but that if Ogden should fail to pay the fifty pounds, at the time stipulated, he should pay rent, at the rate of ten bushels of corn per acre, for the cleared 1 and, with certain exceptions and qualifications which it is not necessary to detail.
Neither party complied with the covenant.
About the first of January, 1801, Ogden sent a message to the executor, communicating his intention not to keep the land, as a purchaser ; consequently, he did not, at the expiration of four months, pay the fifty pounds, nor was a conveyance made to him. But in the summer of 1801, the parties having in' the mean time ascertained that Montgomery had conveyed' the title, Ogden changed his determination, and paid the fifty pounds. He paid, some time afte'rwards, the fifty seven pounds; but never has paid the seventy three pounds, which he covenanted to pay to Montgomery. But, not having received a conveyance from the executor and executrix, and having, several years after he took possession, purchased some adversary outstanding titles, for the pur *249 pose, as he said, of securing and quieting his possession and right, he refused to pay the seventy three pounds, and attempted to disclaim the contract. Whereupon, Montgomery sued Walker’s representatives, on the bond for seventy three pounds, Hut failed in his action. The cause of this failure does not appear in this record.
Bilk
Answers,
peem, 0f t]ie circuit court,
Vendee of land (by executory contract) after remaining many years in possession, recovers a judgment on a breach of the covenant for a title. The vendors then bring their bill, against the vendee, for the rents, profits $*c. which the vendee resists, on the ground that there was a paramount title to the land, which he had acquired : held, that as the question of title was not decided (nor properly put in issue in this suit) a decree for the amount of rents and profits was erroneous.
In 1821, Ogden sued the executor and executrix, in the Bourbon circuit court, for a breach of covenant, in failing to make the conveyance according to their undertaking; and in 1828, he obtained a judgment against them, for eight hundred thirty five dollars sixty one cents, the principal sum which had been paid by him, and six per cent, interest thereon.
To enjoin that judgment, this suit in chancery was brought. The bill and amendment pray for a decree for rents, and for a set'oiF of rents against the judgment, and for restitution of the land.
The answers resist a decree for any relief, on the ground : — that the complainants had no title ; that the defendant had purchased the title from others ; that the title so purchased is the paramount right, and that consequently he should not be considered as a tenant, nor compelled to restore the possession.
The circuit court decreed, that the complainants were not entitled, to rents, nor to restitution; but that they were entitled “ to the value of the improvements upon the land when Ogden got possession; and accordingly decreed to them a credit on the judgment for four hundred and forty three dollars, and dissolved the injunction, as to the residue, with damages.
To reverse that decree, this writ of error is prosecuted.
Whatever may be the true measure of right between the parties, the decree has not established it, according to any allowable deduction from the facts, or known principle of equity.
The decree not only permits the defendant to enforce *250 his judgment, without any deduction for the use of the land, but virtually decides, that he has a right to hold the land under his alleged purchase of a title adverse to that of Walker, under which he entered. By decreeing to the plaintiffs, the value of the improvements .which were on the land at the date of their sale to the defendant, the court decided, in effect,.that he should hold the land, in virtue of the title which he claimed to have purchased from Sprigg, since his contract with the plaintiffs ; and consequently, the circuit court must have adjudged that title superior to that of Walker or Montgomery ; and must also have been of opinion, that he obtained that title under such circumstances as to entitle him, in equity, to a retention of the possession, even against the right of the plaintiffs. In this the circuit court erred.
A decree settling conflicting claims to land, should not be founded on the mej-e legal title: the equitable title, entry, fyc. should be investigated.
There may be cases, where the vendee of land (though a quasi tenant) may protect himself, in chancery, under a superior title acquired from a stranger, against the claims of the vendor under whom he entered.
First. Though the defendant has exhibited Sprigg’s patent, and has shewn a conveyance from Sprigg, for a valuable consideration, yet there is a technical objection to the mode of deriving and authenticating that title; and, therefore, the deed to the defendant cannot be deemed so far evidence, as to authorize a judicial decision in favor of the validity of his title, claimed to have.been derived from Sprigg.
Second. Neither the entry of Sprigg. nor of Montgom-ry, has been exhibited ; and, though Sprigg’s patent is prior in date to that of Montgomery, the chancellor should not have decreed in favor of the defendant on the mere legal title, even if, otherwise, it had been proper to adjudicate on the relative superiority of the conflict-, ing rights.
Third. There is no conclusive evidence fendant bought the title of Sprigg under stances as would permit him, even in equity, to dispute the title of the plaintiffs. If the defendant, after he entered under the contract with the plaintiffs, had ascertained that their testator had no title, or that his title was inferior to that of Sprigg, and had, in perfect good faith and proper candor and liberality to the plaintiffs, purchased Sprigg’s claim for the purpose of quieting his possession, he might, in a clear case, be entitled to the , that the de-such circum- *251 protection of the chancellor, against the effect of any legal estoppel which would, in an ordinary case, bind him as the quasi tenant of his vendors. Facts may have occurred which would protect him, in equity, against any claim of restitution-. What those facts should be, we shall not now stop to explain, because they have not been satisfactorily established in this case. Indeed, the parties did not seem to contemplate a full and final trial of-the titles, and the case was not so prepared as to enable the court to- decide on the equitable rights of the parties. The decree for improvements is, therefore, erroneous.
The general rule is, that, upon a decree rescinding a contract of sale, the possession must he restored to the vendor. — -But, if the rescission he the mere effect of a recovery at law, for a breach of the obligation to con vey, the vendor will he left to his legal remedy, to regain the possession. The chancellor will notinterfere,unless other circumstances give the jurisdiction, and also constitute a proper case for relief.
It becomes necessary that we should now ascertain, whether the plaintiffs in error be entitled to a decree for any relief whatever.
As it is a maxim in equitable jurisprudence, that he who asks equity, must also himself do that which is equitable, and as the chancellor should, when he rescinds a contract, reinstate the parties as far as possible, therefore it is a general rule, that a vendee in possession, and who entered under the title of his vendor, shall hot be entitled to a decree for rescinding the contract, without a restitution of the possession of the land.
But the reason of that general rule does not apply to a vendor who appeals to the chancellor for restitution, merely because his vendee had renounced a specific execution, by suing at law on the contract, and obtaining a judgment for damages, for a non-execution of the covenant to convey- In such a case, the general rule is, that, as the vendee had elected his legal remedy, and as the vendor, also, has a perfect legal remedy for restitution, the chancellor should not interfere either to compel restitution, or to enjoin the judgment for damages until restitution shall be made.
If the vendee, after obtaining a judgment for damages, shall apply to the chancellor, to aid him in enforcing it, he may be required to make restitution, as a condition of obtaining the relief which he seeks. But we know of no case in which relief was ever decreed, when the vendor was complainant, and sought restitution only. Upon a bill filed by the vendor, restitution should not be decreed, unless it be incidental to some other matter, *252 ■which gives jurisdiction to the chancellor. .And ever? then, there may be such equitable objections to a decree-for restitution, as would make it proper for the court to forbear, and remit the parties to their usual,"legal, and more appropriate remedy. In this case there are some, such objections. The plaintiffs have not asked for a decree rescinding the contract ; nor offered to pay the amount to which the defendant may be entitled, and for which he would hold a lien on the land. Montgomery’s patent does not cover more than about two thirds of the hundred and fifty acres sold to the defendant by the plaintiffs; and the residue seems to have been sold by mistake. As the possession of the defendant, for more than twenty years, should be deemed that of the plaintiffs, unless something more should appear than what this record’ satisfactorily establishes ; should restitution be decreed, the defendant might be barred, by his own possession, from availing himself of the benefit oí the title which he bought from Sprigg, as he avers, and as may be considered probable ; and which tide is not only older than that of Montgomery, but includes about fiity acres of the land which the plaintiffs sold, and to which they had no semblance of even a colorable claim. It may not be amiss to state also, that the plaint ills defeated an action brought by Montgomery, long since 1800, for the seventy pounds, and we presume that they succeeded on the ground that he was unable to make a good title. Under such circumstances restitution, when it is a matter of sound and enlightened discretion, should not he decreed to the complaining vendors ; as such a decree might be ruinously unjust, and they have a perfect and effectual remedy at law. Should they resort to their legal remedy and obtain a judgment for eviction, then the defendant may enjoin that judgment, and have a full, fair, and equitable end put to the whole controversy, in all its bearings and incidents.
Restitution (of land) is a matter of local jurisdiction. Tho’ where other circumstances give jurisdiction over the parties and their contract, and the restitution is a mere incident, it may be decreed in another county.
*252 But there is another and more conclusive objection to a decree for restitution, in this case. Restitution is, per se, a matter of local jurisdiction, and if it could be entertained by the circuit court of Bourbon, it would he so sustained only as an incident to, or consequence of, *253 some other matter which gave jurisdiction to that court, over the parties and their contract. But no such matter appears in this case. The rents were liquidated by the covenant. The remedy, therefore, was purely legal. There is no allegation of non residente, or insolvency, or other extraneous fact, which could translate jurisdiction over that covenant from a court of law to the forum of the chancellor. As the defendant was, by that agreement, to hold *he land for the use of the hundred and seven pounds which he had paid, he ought not to have obtained a judgment for the interest, in his action of covenant. That the plaintiffs might have prevented ; but neither their omission to do so, nor any error in the judgment, can vest the chancellor w,ith jurisdiction to revise toe judgment, or enjoin, any part of it, and set off the interest to which the defendant was not entitled, in consequence of his having already received.it in the u-e oí the land, for which his agreement bound him to allow the use of the hundred and seven pounds, which ne had paid. They filed a plea averring that, by the covenant, the plaintiff was to enjoy the land, lor the use of the one hundred and seven pounds, and claiming a- deduction for the interest on that sum. But, as it was improperly a plea in bar to the action, the court properly sustained a demurrer to it. They have thus shewn, that our construction was their own understanding of the contract.
If a party has a good delence at law, (to the whole or part of the demand) if fails to present it in due form, or it is disallowed by the verdict, chancery cannot relieve him.
A plea', in bar of the action, which sets up a defence to apart only, (as the interest,) is bad on demurrer.

Judge Under-™°°{d’s

We are, therefore, of the opinion that the circuit court had no jurisdiction to render any decree in favor of the plaintiffs.
Wherefore, it is decreed by this court, that the decree of the circuit court be reversed, and the cause remanded, with instructions to dissolve the injunction, and dismiss the bill, without prejudice.