EDWARD T. BUTLER ET AL. *v.* JAMES L. BIRKEY ET AL.

A. became surety for B. & C., partners in trade, upon their note, payable to D., for $2000, upon B. conveying to A. moneyed contracts, and lands in other

counties, as collateral security, to protect him against said liability. H. shortly after bought out C.'s interest in the partnership, and agreed to assume and pay the debt to D. and all other partnership debts. B. became insolvent, suffered judgment to be obtained by D., and execution thereon to be levied on the lands of C. A petition was filed by E., a judgment creditor of B., against B., A. and C., to subject said securities held by A. to the payment of his judgment. C.'s lands being afterward sold, and D.'s judgment paid from the proceeds, C. also claimed said securities in respect to said debt, so by him paid for B. to D. Held:

1. That C. having so, by agreement with B., become merely his surety upon the debt to D., although sustaining to A. the position of principal, or prior indorser, was, as to said securities held by A., to be regarded his co-surety.

2. That C., having so paid D.'s judgment, as surety of B., and thereby relieved A. from further liability, became entitled, as such co-surety of A., to said securities, or to a sufficient part thereof to indemnify him for such payment; and that C.'s equity in regard to the securities was superior to that of E.

RESERVED in the district court of Licking county.

On the 12th of December, 1855, the plaintiffs brought this suit in the court of common pleas of Licking county, against James L. Birkey, Washington Streeper (who died pending the suit), and Thomas R. Eddy.

The petition states that plaintiffs are judgment creditors of Birkey and Streeper for $643.22, with interest from November 5, 1855; that Birkey and Streeper have no property subject to execution; that Eddy has in his possession money contracts or securities in which Birkey has some interest, and which were put by Birkey into the hands of Eddy to secure him against his (Eddy's) liability to one Sturges, as surety for Birkey and one Fleek, for about $2000, which was in judgment; that by reason of some judgment in the said common pleas, Sturges (or his assigns) is required to exhaust the property of Birkey and Fleek; that Sturges had levied his judgment on the lands of Fleek, out of which the judgment would be fully paid. The petition then prays that Eddy may be required to pay the plaintiffs' judgment out of the securities in his hands, after the Sturges' judgment shall have been satisfied out of the property of Fleek, and asks general relief.

Birkey and Streeper make no answer.

The answer of Eddy states that at the time the petition was filed, Birkey was indebted to him in about $2500, and that he (Eddy) was liable as surety for Birkey and Fleek, as

stated in the petition; that Birkey had conveyed to him the following property and securities, viz.: 117 acres of land in Marion county, Ohio; a title bond for 20 acres, in same county; 20 acres of land in Auglaize county, Ohio; 80 acres of land in Illinois; a judgment against Pennel and others, on which there was due $966.29, with interest from June 28, 1855.

Eddy's answer further states that he held the Pennel judgment and the lands in trust, first to secure and pay what Birkey owed him, and then to indemnify him against the Sturges judgment.

The cause, on these pleadings, was tried in the district court, at its July term, 1860, and that court found the facts specially, and reserved the cause to this court for decision upon the questions of law.

The court found the facts to be as follows:

That Birkey had conveyed to Eddy the lands mentioned in Eddy's answer, and another tract of twenty acres in Henry county, and had assigned to him the Pennel claim to secure Eddy, as stated in his answer; that they were of value more than enough to pay what Birkey owed Eddy, and that Fleek knew that Eddy held said securities.

That in August, 1853, Fleek and Birkey having been engaged in purchasing wool, Fleek sold his interest in the wool business to Birkey, who agreed to pay all the joint liabilities, of which the Sturges claim was one.

That in October, 1854, judgment was recovered on the Sturges claim against Fleek, Birkey and Eddy.

That on the 19th of December, 1854, Eddy brought suit to enjoin the collection from him of the Sturges judgment, alleging that he was merely surety for Birkey and Fleek, that Fleek's property was ample to satisfy the judgment, and that the judgment had, in fact, been paid by means of illegal interest, which Sturges had charged Fleek and Birkey; that Fleek and Birkey were also made defendants in that suit, and final judgment entered to the effect that Fleek's property was sufficient, and that no execution should issue against Eddy until Fleek's property had been exhausted.

That on the 10th of November, 1855, Fleek sold to his

son-in-law, Wright, certain real estate on which the Sturges judgment had been levied, and Wright agreed to' pay the Sturges' judgment; that at the same time Fleek and Wright were desirous of obtaining something from Birkey to aid in paying Sturges, and that Fleek should have the benefit of it, but that no stipulation to that effect was made between them, nor did either of them make any arrangement to that effect with Eddy.

That on the 7th of January, 1856, Wright paid the Sturges judgment, and had it assigned to H. D. Sprague, for his (Wright's) use, and on the 18th of July, 1856, Sprague assigned it to Wright.

That on the 29th of April, 1856, being after the commencement of this suit, it was agreed between Eddy, Birkey and Wright, that a part of the lands so held by Eddy should be conveyed to Wright, in satisfaction of the Sturges judgment, and that Birkey should give to Eddy indemnity against any loss he might sustain by this suit, Eddy having had notice that Wright had agreed to pay the Sturges judgment as above stated, and that Wright owned the judgment.

That Eddy did convey to Wright a part of said lands, worth about $2000, and Birkey placed in the hands of Eddy securities to indemnify him against this suit.

That Wright intended to convey the land to Fleek, and Eddy had notice of that, when he conveyed to Wright.

That since the commencement of this suit, Eddy has collected the Pennel claim, has converted part of the lands into money, that the remainder of the lands (except what was conveyed to Wright) were, at the time of the trial, still held by Eddy, and something was still due on what Birkey owed him, and that there was due to plaintiffs on their said judgment against Birkey and Streeper, $824.55.

*J. Buckingham*, for plaintiffs.

*Smythe & Sprague* and *Case*, for defendants.

Sutliff, C.J.—The petition in this case is what, under our

former chancery practice, would be denominated a creditor's bill; and seems to have been filed under section 458 of the code, which provides as follows :

"When a judgment debtor has not personal property subject to levy or execution sufficient to satisfy the judgment, any equitable interest which he may have in real estate as mortgagor, mortgagee or otherwise, or any interest he may have in any banking, turnpike, bridge or other joint stock company, or any interest he may have in any money contracts, claims or choses in action, due or to become due to him, or in any judgment or decree; or any money, goods or effects which he may have in the possession of any person, body politic or corporate, shall be subject to the payment of such judgment by action, or as in this chapter provided."

This section of the code, providing for subjecting credits and equities of the judgment debtor to the payment of a judgment against him, is substantially the same as section 14 of the act of March 14, 1831, entitled "an act directing the mode of proceeding in chancery."

Under our present statute, therefore, it may be reasonably inferred that the legislature intended to continue rather than change the former practice of the courts, in extending equitable relief to the judgment creditor, in the cases mentioned, when unable to collect his judgment by execution and levy.

It was, however, expressly provided by section 16 of the chancery act of 1831, that application might be made "to the courts of chancery in the county where such judgment was rendered, or where said lands lie, to subject any or all of the hereinbefore enumerated interests to the payment of the judgment or decree aforesaid, according to the usual course of proceeding, and known usage of courts of chancery," etc.; whereas section 458 of the code is silent as to the county in which the action may be brought.

From this omission in the section, it has been suggested, by counsel of defendant, that it is probable that the legislature intended to change the practice, and require the creditor's bill in all cases, when filed to subject the interest of the debtor in lands, to be filed in the county where the lands are

situate; and it is also suggested that section 45 of the code may reasonably be understood to embrace this case, so far as relates to the interests of the judgment debtor in lands.

To these suggestions I think it might be well replied— that this class of cases is not embraced in section 45 of the code. The causes named in that section are actions, first, for the recovery of real estate, meaning ejectment and forcible detainer, etc.; second, for the partition of real property; and, third, for the sale of real property under a mortgage lien, or other incumbrance. As to each and all of these causes named in this section, they have always, in this state, under our former practice, been regarded *local*, and the action or proceeding had always to be commenced in the county where the lands, or some part of them, were situate; with the same and no other exceptions than those expressed by section 46.

But the petition in this case does not assert, either a mortgage or judgment lien, or any other existing liens upon the lands upon which the sale is asked. Nor do I think it can be shown that this proceeding, by creditor's petition under section 458, is embraced in any of the specified causes of action in title 5, of chapter 1, of the code, directing as to *the county* in which actions must be brought. It is not pretended that this action is included in the first case, " for the recovery of real property," etc.; nor in the second case, mentioned in section 45, " for the partition of real property; and I am very clear in the opinion that it can not be, with any more propriety, insisted that this class of actions is intended in the third description of actions—" for the sale of real property under a mortgage," etc. I understand " the sale of real property under a mortgage," or under a " lien, or *other* incumbrance or charge," to mean *a sale of the property so subject to the mortgage lien*, or *other lien for the* satisfaction of such *existing lien* The *lien* here expressed exists, independent of the action, and the action so required to be brought in the county as the foreclosure of a mortgage, or enforcing a judgment lien, is only the action necessary to enforce such existing lien—liens which have, for the most part, been only co-

extensive with the limits of the county. And it may be added, this class of actions has always been required, under our former practice acts, to be brought in the county, to the same extent now expressed by sections 45 and 46 of the code.

It seems to me, therefore, very evident that so far as regards actions to be commenced under section 458, if they are to be governed by any provisions contained in title 5, of chapter 1, of the code, it must be section 53 of that article, which reads as follows : " Every other action must be brought in the county in which the defendant, or some one of the defendants resides, or may be summoned."

Again, as to the absence of the provision in section 458, contained in the former act, I think it should, at most, only require the place of commencing the action, to be governed by section 53.

But the old chancery act, as we have seen, permitted all interests and equities and credits of the judgment debtor within the state, to be subjected by *one* suit; and we know that a leading object of the reformed practice under the code, is to avoid, not to make multiplicity of actions. I think, therefore, nothing but clear and express language in the code should allow a construction which, without any apparent reason, would require as many suits as there are counties in the state where the judgment debtor may have interests in lands; or, if the judgment debtor, as in this case, has credits in the county where he resides, and also interest in lands in another county, then to commence one suit to charge his credits where he resides, and another in the county where the lands are situate.

But the case really does not, perhaps, render it necessary to decide this question; and the question may, at some future time, be so presented as to require it to be more carefully considered, and decided by the court. I have here only expressed my own views of the objection urged to the *venue*, so far as necessary to embrace the subject of the landed interest sought to be charged, as well as the money contracts and credits more particularly.

While, therefore, the court would not unanimously consent to dismiss the petition, as to the interest in lands, for want of jurisdiction, there is another view of the case which may, perhaps, lead to the same result.

The petition, it will be perceived, does not seem to charge any landed interests of the judgment debtors, nor ask any action of the court in relation to any interests in lands. It merely charges that Eddy has in his possession money contracts or securities in which Birkey has some interest, and which were put by Birkey into the hands of Eddy, to secure him against his (Eddy's) liability to one Sturges, as surety for Birkey and one Fleek for about $2000, and that the debt to Sturges has been levied upon Fleek's lands, and will be thereby fully paid; and asks that Eddy may be required to pay the plaintiff's judgment out of the securities so soon as the Sturges judgment is paid out of the property of Fleek; and asks general relief.

To this petition Eddy makes answer, not only in relation to the money contracts and securities, mentioned in the petition, but also, very properly, in his answer sets forth, generally, what landed securities were also conveyed to him by Birkey, and the disposition and state of the same. But no description, or statement of the value of said landed interests, sufficient to enable the court to make any order in relation to them, is either asked in the petition, or made in the answer, or expressed in the finding of the court below, upon which the case is reserved. Nor does the record show what were the securities, subsequently to the commencement of this suit, so placed in the hands of Eddy by Birkey, to indemnify him against this suit, as to the conveyance of the $2000 worth of the lands to Wright. In the finding of the court, in relation to the lands, it is only said, that since the commencement of this suit, Eddy has converted part of the lands into money, that the remainder of the lands (except what was conveyed to Wright) were, at the time of the trial, still held by Eddy, and something was still due on what Birkey owed him. It is not charged in the petition, nor admitted in the answer, nor found by the court, that the securities,

money and landed interests, in the hands of Eddy, were more than sufficient to secure him upon the Sturges judgment and for the indebtedness of Birkey to him, Eddy. Nor is it, indeed, claimed, in the argument of counsel, that there will remain any residue in the hands of Eddy, if the same are to be appropriated to the Sturges judgment, to the amount hereof, and, also, to the judgment of $2500, due from Birkey to Eddy; and for which purpose his answer, confessing the receipt of the landed securities, they are stated by Eddy to have been conveyed to him by Birkey.

It is, therefore, certain that the only question submitted to us, is the one which counsel upon both sides have treated as the main question in this case, viz : Whether, upon the filing of the petition and the commencement of the action, the plaintiffs or Fleek had the superior equity to the securities placed in the hands of Eddy, for his indemnity as surety against the Sturges debt of some $2000 ?

The inquiry as to the relative equities of the parties should be determined as of the time of the commencement of the suit; for, it can not be pretended that, if the plaintiff then had the superior equity, Fleek has acquired any title to those equities as against such superior equity of the plaintiffs so asserted by the commencement of their suit, in regard to any equities described and charged in the petition. Upon the commencement of the suit in relation to all equities and interests therein charged, the maxim *"pendente lite nihil innovetur"* becomes applicable, and obtains during the continuance of the action.

How, then, stood the relative equities of the plaintiffs and Fleek upon the 12th day of December, 1855 ?

It appears from the record that, prior to the month of August, 1853, Fleek and Birkey had been partners in purchasing wool, and had, as such partners, borrowed money of Sturges or contracted a debt to him, in the sum of about $2000, upon which Eddy had, at the time, become surety, and for his indemnity, as such surety, Birkey made over to him securities, as well as for his security for some $2500 of an individual claim held by him against Birkey.

It further appears that, in August, 1853, Birkey purchased all interests of his partner, Fleek, in their wool business, and, in consideration of Fleek so selling to him his interest, agreed to assume and pay the Sturges judgment, and their other partnership debts.

From the time of this purchase and agreement on the part of Birkey, it is evident that, although, as to Sturges and Eddy, Fleek continued to sustain substantially the character of maker and principal, his relation to the debt, as between him and Birkey, was only that of surety. And Fleek assumed that relation in August, 1853, at the time of selling out to Birkey and accepting Birkey's agreement to pay this debt to Sturges, with the full knowledge that Birkey had already furnished ample securities to Eddy for the payment of said indebtedness. Fleek's relation, therefore, to Birkey was precisely the same as that of Eddy. They each sustained the relation of sureties for Birkey. And although Fleek occupied the position of a principal, or, rather, of a prior indorser toward Eddy, they were co-sureties as to any securities received or held by either from their common principal, Birkey, in regard to the debt to Sturges.

Now, it is a well-established doctrine, that when a surety pays the debt of his principal, when liable therefor, that he is, upon such payment, not only entitled to the benefit of all collateral securities, both legal and equitable, held by the creditor as an additional assurance of payment; but where there are two or more persons sustaining the relation of surety, and one of them has received, and holds, of the principal securities for his own indemnity, and the other surety is made liable, and pays the debt, he thereby becomes entitled to all the securities, for his indemnity, so held by his co-surety. See Burge on Suretyship, ch. 5, bk. 3; and Story's Eq. Jurisp., sec. 499, and the other authorities there referred to.

As a result from an application of this reasonable doctrine to this case, from the time that Birkey agreed with Fleek, upon buying out his interest in the partnership, to pay Sturges, thus placing Fleek in the relation of surety, Eddy, who, as

surety, held securities for his own indemnity, held them as a co-surety for his own indemnity so long as the debt remained unpaid. And Eddy thereafter held the securities, as to his principal, as he did before, in trust for the payment of the debt, in case the principal failed to pay. His title was good at law, subject, nevertheless, to the condition of defeasance, the payment of the debt, or the release of his (Eddy's) liability as such surety, by the principal. But the performance of this condition by Birkey, the payment or satisfaction of the debt, while it discharged Eddy's liability, at the same time discharged the liability of Birkey's other surety, Fleek ; so that, from the fact of Fleek being a surety, and the securities so held by Eddy being held by him in trust, and conditioned for the satisfaction of the debt by the principal, became incidental, but necessarily held in trust by Eddy for the indemnity of Fleek, as well as for the surety, Eddy. And the only condition of defeasance by which, in equity, the principal, Birkey, could reinvest himself with any rights in the lands and other securities conveyed to Eddy, was *payment* of the *debt*, either by other means, or by such part of the securities or their proceeds, as was adequate for that purpose. In the latter case, his equitable claim would, upon payment of the debt by part of the securities or their proceeds, by Eddy, attach to the residue of the securities. But, until such performance of the condition of defeasance, Eddy would continue to hold the securities in trust by as perfect a title as when he first received them ; and neither Birkey nor his creditors or representatives could prefer any claim, in a court of equity, in relation to the same, except to ask an execution of the trust by having the securities subjected to the payment of the very debts for which they had been so pledged.

In this view of the principles of law governing the case, how stand the facts ?

The finding of the court upon the few points to which only it is now important to advert, is to this effect : While Eddy, as a surety, was holding the securities conveyed to him by Birkey, to hold, by title, in trust, defeasable only on payment of the debt by Birkey, as principal, Fleek also sustained only

the relation of surety toward Birkey, for the payment of the Sturges debt; and Birkey utterly failed to pay as principal,. and suffered the judgment to be levied upon Fleek's lands; and the same were sold by Fleek, and the Sturges judgment payed from the proceeds; and two thousand dollars' worth of the lands have thereupon been conveyed by Eddy to Fleek, or to his son-in-law, Wright, as an indemnity or remunera-- tion for Fleek having thus, as surety, paid the Sturges judgment.

Now, we have already said, that, upon one surety paying the debt, under such circumstances, he was entitled to all se- curities held by his co-surety in regard to the debt. And the. transfer of the $2000 of the landed security, by Eddy to Fleek, or to his son-in-law, with his approbation, upon such payment of the Sturges debt, is clearly within the rule of law thus mentioned, as applicable to this case.

The petition must, therefore, be dismissed, and judgment. entered for the defendants.

Judgment accordingly.

PECK, GHOLSON, BRINKERHOFF and SCOTT, JJ., concurred.