Price, J,
The plaintiff filed her petition in the court below, and states, in substance, as her cause of action against the defendants, that on the 5th day of April, 1879, James T. Boyd was appointed trustee of the estate of Stella Everett, a minor non-resident of Ohio, which appointment was made by the probate'court of this county, and that Boyd accepted and qualified by giving bond as such trustee in the sum of f>(i, 000.00, with Joseph T. Robinson and William H. Free, the defendants, as his sureties, which bond was conditioned for the faithful performance of such trust and the accounting for and payment of all money by him received in his trust capacity. The bond was approved, and the trustee entered upon the discharge of his duties, and a large amount of money, property and credits belonging to his ward, Stella Everett, came into his hands as such trustee, and when he- filed his final account with the probate court there was found due the ward, as a balance, the sum of $2,304.00, with interest from December 18, 1887, which amount, on the 5th day of June, 1888, the probate court ordered paid over according to law.
It further appears in the petition that after the filing of the final account and before the order to pay over was made, *213 to-wit: on the 11th day of August, 1887, the trustee, James T. Boyd, now. deceased, executed and delivered to defendant Robinson, .a mortgage deed on certain real estate owned by the- trustee, to indemnify and save Robinson harmless as surety on said bond.
On the -29th day of December, 1888, about six months after Robinson had received .this mortgage of indemnity, and about six months after the order to pay over had been made by the probate court, the plaintiff says she was the owner of a paid-up policy of insurance on the life of said James T. Boyd, issued by a certain insurance company, in the sum of fifteen hundred dollars, which was payable to her at the death of the insured, and that said sum so found due from said trustee to his ward, who had become of age, still remaining unpaid, in order to further secure the payment of said-sum'to said ward by said trustee, at the request of the trustee, Stella Everett, the ward, and the defendant; Joseph T. Robinson, 'the plaintiff was induced to, and did, on said 29th day of December, 1888, assign, transfer and deliver said life insurance policy to Stella Everett, the ward, to be held as collateral security for the payment of the sum so found due from said trustee to said ward, and for which the sureties on said bond stood liable, and for which, also, the indemnity mortgage was liable.
She avers that she-so assigned, transferred and delivered said insurance policy in pledge as collateral, -to secure said ward, but that the transfer was without any other consideration but as surety for said trustee, and that to the extent of the policy, she became and was co-surety with the defendants for the payment of said trust funds.
•It further appears in the petition that as a result of a foreclosure of the indemnity mortgage held by defendant Robinson, the sheriff of this county, on the 26th day of June, 1889, paid of the proceeds of the sale of mortgaged lands of the trustee, $1,236.95, which was applied on what the probate court found due from him.
*214 In September of this same year the trasteé died. This was about nine months after she transferred and pledged the insurance policy as before alleged. The trustee died insolvent, leaving a balance due and unpaid the ward of about $1,200.00, whereby the sureties on the bond became liable; and the policy pledged and transferred by the plaintiff became subject to and was appropriated for the payment of said balance. The defendants paid no part of the liability of the trustee.
It is also alleged that the defendant Free was and still is insolvent, and that on the 15th day of August, 1895, the plaintiff notified defendant Robinson of said payment out of the proceeds of said policy, and demanded contribution from Robinson, and on his refusal, brought this action to enforce contribution.
A demurrer to this petition was overruled by the court below, and defendants answered separately, but there is very little in the answer of either as to any important facts in the case.
Robinson says he denies that the plaintiff assigned or transferred the policy to Stella Everett,at his request; denies that it was made with his consent or procurement, and that whatever was done regarding the transfer and its purpose, was done and completed before he had any knowledge of the same; and he denies that plaintiff was co-surety with him, Defendant Free simply says that he had no knowledge of either the execution of the indemnity mortgage or of the transfer of the insurance policy, and says that the ward has been fully paid,but how or by whom it was paid, he fails to show.
It will be observed that there is no denial of the insolvency of defendant Free; no denial that the ward and trustee induced and procured the assignment of the insurance policy as further surety or security to the ward, but a mere denial that the defendant induced or had knowledge of the transfer.
*215 The plaintiff moved for a judgment in her favor on the pleadings, which was refused, and a finding was made and judgment given in favor of defendants, which we are asked to reverse by a petition in error filed for that purpose.
We may say,in advance,that if the petition states a cause of action for contribution, there is nothing pleaded in either answer that constitutes a defense, and the plaintiff was entitled to a judgment on the pleadings, and the reasons for this conclusion will appear in the further consideration of the case; for, as we regard it, the whole question involved is the sufficiency of the petition.
Over the general rule and right to contribution between co-sureties, there is no contention, and we need not refer to the same, except by way of illustration. It is well known that the right to contribution does not rest on contract, but is the result of the application of genera] principles of equity, and depends upon the actual relation the parties sustain to the instrument and to each other.
This rule is elementary,and is also found in the first branch of the syllabus of the case of Oldham v. Broom, 28 Ohio St., 41. As we shall reason from general principles, well recognized, in deciding this case, we quote another rule stated by the Court in the same case on page 48. The Court says
“For this reason, where several parties to the same, or distinct instruments become sureties for the payment of a sum of money, and one pays more than his share, he may compel contribution from the others as co-sureties.
“Courts of law took jurisdiction of actions for contribution, on the ground that, as equity and good conscience demanded that as among co-sureties there should be equality of burdens, there was an implied assumpsit, which would support an action at law.'’
Also, see section 1418, Pom. Eq, Jurisprudence, Yol. 3:
“Where there are two or more sureties for the same principal debtor, and for the same debt or obligation, *216 whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his co-sureties, in order to reimburse him for the excess paid over .his share, and thus to equalize their common burdens. The same doctrine applies, and the same remedy is given, between all those who are jointly, or jointly and severally, liable on contract, or obligation in the nature of contract. The right, however, may be controlled or modified by express agreement among the co-sureties or debtors,”
Hence, we see that sureties may be on different instruments, and instruments made at different times, and the principle applies whether the sureties are jointly, or jointly and severally liable, as this section reads.
Another principle is, that it makes no difference with the right of contribution, that one surety does not know that another becomes bound as such
In support of that principle, we quote from Brandt on Suretyship, section 223, 1st edition, which reads as follows:
“As the right to contribution results from equitable principles, and not from express contract, such right is not at all affected by the fact that the surety seeking contribution, or from whom it is sought, had no knowledge that the other had assumed the obligation of a surety for the same thing. Thus it has been held that a surety, who becomes such without the knowledge of one who is already bound, and pays ■the debt, may recover contribution from the first surety.”
See also 19 Pick,, page 26, where it is said, “that no agreement is necessary to entitle sureties who sign a note at different'times to contribution from' each other.”
There is still another principle interwoven with this right of contribution, which is, that the sureties may be on different instruments, and on instruments of different amounts of penalty. In other words, the different sureties may be on bonds of different amounts; The bond on which one or more is surety may be one sum, and others on bonds *217 of a much larger or much smaller, sum. So that in so far as the extent of liability is important, the co-sureties are not "aequali jure,’’ We read from Brandt on,Suretyship, 1st edition, section 221, (Section 255, 2nd edition), as follows:
"Co-sureties are' liable to contribution, but sureties for the same principal who are not co-sureties are not so liable. Much of the learning on this subject is devoted to who are and who are not co-sureties. Where all the sureties sign the same instrument and become equally bound thereby, they are, of course, co-sureties, and liable to contribute to each other. So, also, when several sureties become bound for the debt, default or miscarriage of the same principal, with reference to the same transaction, even though they become bound by different instruments, at different times and for different amounts, they are generally considered co-sureties,and held liable to contribution. In the leading case on this subject the principal -was receiver of the fines and forfeitures of the customs of the outports. and to secure the performance of his duties gave three separate bonds in the same penalty, but signed by different sureties. It was held that the sureties in the three bonds were liable to each other for contribution. The Court said: ‘If a view is taken of the cases, it will appear that the bottom of contribution is a fixed principle of justice, and is not founded in contract. * * * In the particular case of sureties, it is admitted that one surety may compel another to contribute to the debt for which they are' jointly bound. On what principle? Can it be because they are jointly bound? What.if they are jointly and severally bound? What if severally bound by the same or different instruments? In every one of those cases sureties have a common interest and a common burden. They are bound as effectually quoad contribution, as if bound in one instrument, with this difference only, that the sums in each instrument ascertain the proportions; whereas, if they are all joined in the same engagement, they must all contribute equally.’ ”
Therefore, we assume the law to be, and it surely is, that if the plaintiff, at the time, and instead of transferring the *218 insurance policy of $1,500.00, bad become surety on a bond of the trustee for that sum, and she had paid to the extent .of her bond as such surety, she could enforce contribution by the sureties on the original $6,000.00 bond, upon which the defendants are sureties.
To come within the rule that the cosureties must be “aequali jure” in order to maintain contribution, does not require that each and all are bound to the principal in the same sum, but for the same common purpose and relating to the same subject matter.
There is still another principle that may cast some light on the question. Suppose at the time the plaintiff turned over this policy, and in place of doing so, she had signed a bond for the same amount at the request of the ward, or her husband, the trustee, and when she became liable by reason of the default of the trustee, she had no money, but had land or other property; in such case she, with the consent of the payee, could turn over the land or other property in satisfaction of her bond, and having done so, enforce contribution against her co-sureties for the value of the property so turned over. It would not be necessary to wait for judgment on the bond against her as a basis for her action.
This principle is recognized in Brandt, section 250, 1st edition, (section 286, 2nd edition), and cases there cited:
“Where the surety paid the debt of the principal in lands, it was held, in a suit for contribution by him against a co-surety, that the price at which the lands were taken as payment by the creditor, would ordinarily be the amount on which the damages should be founded; but if the lands were taken at a very high price, as a compromise of a doubtful claim, the actual value of the lands might, perhaps, be the basis of the damages, and in s.uch case the actual value of the lands should be-allowed, no matter what they cost the surety.”
It was the ownership of property that qualified the de *219 fondants to become sureties, and had they become insolvent, the probate court would have exacted a new bond with competent sureties. From this we see that property qualifications must exist when the bond is given and continued during the trust, and its acceptance depends on the character and extent of the property of the sureties.
While they did not, in a legal sense, pledge their prop-' erty for the faithful performance of the trustee’s duties, yet their ownership of the same in sufficient value, was the prime, and perhaps, sole qualification.
When the plaintiff pledged the insurance policy, she signed no written obligation whereby she became surety; but it was assigned to the ward by parol contract, whereby it was placed in her possession as security in addition to. the original bond, and it was held, as the bond was held, for the protection of the ward against the default of the trustee. This property pledged held a relation similar to the property of the defendants. In the case at bar, the ward held the pledged property, and satisfied her claim with its proceeds. Had there been a bond in its stead, the surety could either have satisfied it by voluntarily turning over sufficient land or other property, or by judgment on the bond, and execution thereon, the judgment would have been satisfied. In equity the situations are not materially different, and are governed by the same equitable principles.
But it is urged, that the plaintiff was a volunteer in pledging her policy. In a qualified sense that is true. In the same sense, the defendants were volunteers when they signed the bond of the trustee, for both acts, no doubt, were at his request.
But it is argued, also, that the rule of contribution must be mutual, and that if defendants had been compelled to pay the debt, they would have had no right of contribution against the plaintiff, because she was not liable, and no action could be maintained against her.
*220 This reasoning is good, if the premises on which it is based are-sound. But are they?
We'again resort to elementary principles. Let us assume an illustration. Taking the facts as stated in reference to the life insurance policy. Now, if Robinson, without the knowledge that this policy of-insurance had been placed in pledge for any part of the liability, had paid the full amount of the debt due the ward, and discharged the obligation-in that respect, and afterwards found that the plaintiff’s policy was in pledge as security for the defaulting trustee, what were his rights in the premises? He could demand a surrender of such security to himself for the purpose of reimbursement. We refer to Pom. Eq. Jurisprudence, section 1419, where it is said:
“The surety who has paid or satisfied the principal debt or obligation's entitled to be subrogated to, and have the benefit of, all securities which may at any time have been put into the creditor’s hands by the principal debtor, or which the creditor may have obtained from the principal debtor. By the fact of payment the surety becomes an equitable assignee of all such securities, and is entitled to have them assigned and' delivered up to him by the creditor, in order that he may enforce them for his own reimbursement and exoneration, If, therefore, the creditor refuses to surrender up such securities, the surety may maintain an equitable suit to compel their assignment and surrender, The doctrine and remedy of subrogation are exteuded also to the creditor, who is subrogated to and entitled to the benefit of, all securities given to a surety for purposes of his indemnification by the principal debtor; and also between co-sureties,so that one surety, in enforcing his rights of exoneration and of contribution, is subrogated to securities given to his co-surety,”
See, also, Butler v. Birkey, 13 Ohio St., 514-523.
It would be no answer for the plaintiff in this case to,say,, if Robinson would resort to such a demand-upon, the creditor, we do not stand “aequali jure”- — -I am. not, liable to the.,. *221 same amount, as I signed no bond,and did not become personally liable upon any obligation. The law is against such a position.
Lutes & Lutes, for Plaintiff.
McCauley & Weller, for Defendants.
Hence, we see that the argument against the plaintiff in this respect falls to the ground.- There was that mutuality between them that the defendant Robinson, if he had discharged this full debt owing to the ward, even before he knew of the. possession of this life insurance policy by the ward, could demand its surrender and appropriation for his reimbursement.
In this case Robinson exhausted his indemnity, and paid nothing of his own means. He was saied from payment by the proceeds of this policy. To this extent he was greatly benefited, and in good conscience, which is the key to equity, he should bear some of the plaintiff’s burdens.
In our investigation of his case, we have found no precedent precisely in point; but the principles cited lead us to but one conclusion: that the contribution should be made.
The judgment and findings below should be set aside and reversed, and giving the judgment the court below should have rendered, we sustain the motion of the plaintiff below for judgment on the pleadings, and render judgment accordingly.
Finley, J., dissents from this opinion.