Jones, McDowell & Co. v. Fletcher.

---

JONES, McDOWELL & CO. v. FLETCHER.

1. JURISDICTION : *Local—transitory.*
   Jurisdiction of a chancery court to enjoin the sale of land under a fraudulent or satisfied mortgage, or for an account of the amount due on the mortgage, and to cancel fraudulent conveyances of the land, and to inquire into alleged partnership matters in the land, is not local—confined to the county in which the land is situated, but may be exercised in any county where jurisdiction of the defendants can be obtained by personal service of process upon them; and this jurisdiction is not ousted by filing an amendment to the bill, setting up title and right to possession, and praying for recovery of the land; but the amendment will be stricken out. (Martin, Special Judge, dissenting from this last holding that the jurisdiction for injunction, account, etc., would draw to it for final determination the matter of local jurisdiction.)

2. EXECUTION : *Partner's interest in land subject to.*
   A partner has such an interest in partnership lands as is subject to the lien of a judgment against him, and to be levied on and sold under execution.

Jones, McDowell & Co. v. Fletcher.

3. PARTNERSHIP: *Equity of partnership creditors to assets: How lost.*

The equity of partnership creditors to have the partnership property applied to their debts can be enforced only through subrogation to the like equity of the partners. If, therefore, a partner's interest in the property has been transferred, either by his own sale, or by sale under execution against him, the equity of the creditors is gone; for the partner has no such equity left to which the creditors can be subrogated; and this whether the sale be to a co-partner or a stranger. (Martin, Special Judge, dissenting.)

4. MORTGAGE: *Liability of mortgagee in possession.*

A mortgagee in possession of the mortgaged land will not be charged with rent of improvements put upon the land by him at his own expense.

APPEAL from *Pulaski* Chancery Court.

Hon. D. W. CARROLL, Chancellor.

*U. M. & G. B. Rose* for appellants :

This was a suit brought in Pulaski County, in reference to the title to lands lying in Saline County. The venue in such cases is local, and the Pulaski Chancery Court, therefore, had no jurisdiction. *Gantt's Digest, sec. 4532; Jacks v. Moore, 33 Ark., 31; 1 Jones on Mortgages, sec. 699 ; Fitzgerald v. Beebe, 7 Ark., 319; Gilchrist v. Patterson, 18 Ib., 579; Hewitt v. Wilcox, 1 Met., 155 ; Pomeroy's Equity Jur., sec. 135; Ib., sec. 166 ; Bliss on Code Pleading, sec. 284 ; Watts v. Waddell, 6 Pet., 164; Watkins v. Homan, 16 Ib., 57; Ring v. McCoun, 3 Sandf., S. C., 524; Wood v. Hollister, 3 Abb. Pr. R., 15 ; Stark v. Bates, 12 How. Pr., 465; Mairs v. Remsen, 3 Code, R., 138; Ring v. McCoun, 10 N. Y., 268 ; Leland v. Hathorne, 42 N. Y., 547.*

The bill in this case prayed for an injunction in aid of an ejectment suit already pending. As the filing of the suit established a *lis pendens*, the injunction was unnecessary, and should have been refused. *High on Injunctions, sec. 333.*

Under our present mode of procedure, there is no such thing as a bill in equity in aid of a suit at law. The demurrer to the bill should therefore have been sustained. *Pomeroy's Eq. ·Jur.*, secs. *142, 124, 83, 87; Bliss on Code Pleading*, sec. *167; Pomeroy's Rights and Remedies*, sec. *81; Gantt's Digest*, secs. *4457, 4461, 4897, 4462.*

The bill is bad, because the plaintiff offers to pay only half of the mortgage debt. To redeem he must pay all. *Dalton v. Hayter, 7 Beav., 319; Beekman v. Frost, 18 John., 544; 2 Jones Mort., 1095 ; Anthony v. Anthony, 23 Ark., 481.*

The evidence clearly shows that the lands were held in partnership by W. R. and C. R. Vaughan. The judgment and execution under which the plaintiff claims were against C. R. Vaughan alone. He therefore has no claim upon the lands as against the appellants, who claim under a judgment against the firm for a partnership debt.

The mere fact that the lands are conveyed to the partners in their individual names, does not make them tenants in common.

The true criterion is whether they were bought with the money of the individuals, and intended to be held as individual property; or whether they are purchased with the money of the firm, and intended to be held in partnership. The form of the conveyance is of no significance in equity. The cases holding that where the lands are conveyed to the partners in their individual names, they take as tenants in common as to third parties, are all cases where the rights of innocent purchasers have intervened. The plaintiff, claiming under a judgment, is not an innocent purchaser.

*Case v. Beauregard, 99 U. S., 126,* can not avail the plaintiff. There the court held that where one partner sells his interest to the other *in good faith*, the lien of the partnership creditors is extinguished. Here it is specially charged

in the bill that the sale of C. R. Vaughan to W. R. Vaughan was fraudulent.

Real estate purchased for and appropriated to partnership uses, is, in equity, the property of the partnership, though the title be taken in the name of the individual partners, or in the name of one of them, or of a third person. *Columb v. Read, 24 N. Y., 505; McGuire v. Ramsey, 9 Ark., 518; Drewry v. Montgomery, 28 Ib., 256; Hogle v. Lowe, 12 Neb., 286; Fowler v. Bailley, 14 Wis., 125; Cilley v. Hughes, 40 N. H., 358; Gantt's Dig., sec. 2648; Gossett v. Kent, 19 Ark., 602; Fall River C. v. Borden, 10 Cush., 458; Dupuy v. Leavenworth, 17 Cal., 262; Uhler v. Semple, 20 N. J. Eq., 288; Aboot's Appeal, 50 Penn. St., 234; Lime Rock Bank v. Phetterplace, 8 R. I., 56; Hiscock v. Phelps, 49 N. Y., 97; Matlock v. James, 13 N. J. Eq., 126; Smith v. Tarleton, 2 Barb. Chy., 336; Buffum v. Buffum, 49 Me., 108; Patterson v. Silliman, 28 Penn. St., 304; Roberts v. McCarthy, 9 Ind., 18; Carlisle v. Mulhern, 19 Mo., 58 Ross v. Henderson, 77 N. C., 170; Wells v. Freeman, 35 Vt., 45; Robinson v. Baker, 11 Fla., 192; Collyer on Partnership, sec. 166.*

The creditor of one member of an insolvent partnership can not seize his interest in the partnership in satisfaction of his individual debt. *Willis v. Freeman, 35 Vt., 44; Conroy v. Woods, 13 Cal., 626; Thomas v. Lusk, 13 La. Ann., 277; Tappan v. Blansdell, 5 N. H., 190; Commercial Bank v. Wilkins, 9 Greenl., 36.*

A levy of an execution for a firm debt on partnership property will have a preference over a levy for the individual debt of one of the partners. A sale under the firm judgment will convey all the interest of the partners in the property, and the purchaser will acquire a clear title, leaving the creditors of the individual partner only the right to intervene for any surplus that may remain after

satisfying the firm creditors. *Pierce v. Jackson, 6 Mass.,* *242; Morrison v. Blodget, 8 N. H., 250; Jarvis v. Brooks, 23 Ib., 3 Foster, 135; Crane v. French, 1 Wend., 311; Dunham v. Murdock, 2 Ib., 553; Douglass v. Winslow, 20 Me., 89; Collyer on Partnership, sec. 166.*

The plaintiff being a purchaser at execution sale, can not claim to be an innocent purchaser, and he can acquire by his purchase only the interest that C. R. Vaughan had in the property, viz., a right to the surplus after the payment of the partnership debts. *Allen v. McCaughey, 31 Ark., 253; Williams v. McIlroy, 34 Ib., 85; Pickett v. Merchants National Bank, 32 Ib., 369; Tuley v. Ready, 27 Ib., 98; Horner v. Hanks, 22 Ib., 572; Pindall v. Trevor, 30 Ib., 247.*

*Clark & Williams,* John Fletcher and *Z. P. H. Farr* for appellee.

It is a well established rule that a court of chancery may enjoin a person from doing an act or compel him to do an act with reference to lands in a foreign jurisdiction. *2 Story's Eq. Jur., secs. 899, 900, et seq.; Penn v. Baltimore, 1 Ves., 444; Arglasie, Ex., v. Muschamp, 1 Verm., 75; Massie v. Watts, 6 Cranch, 148; Great Falls v. Worster, 3 Forst. (N. H.), 470; Mitchell v. Bunch, 2 Paige Chy., 606; Mead v. Merritt, 2 Paige Chy., 404; Dehon et al. v. Foster et al., 4 Allen (Mass.), 545; Bumby et al. v. Stevenson, 24 Ohio St., 474; Dunn v. McMillen, 1 Bibb, 409; Gardner v. Ogden et al., 22 N. Y., 327.*

The rule is the same whether the property is situated within or without the State. *Mead v. Merritt, 2 Paige Chy., 404; Dehon et al. v. Foster, 4 Allen, 545.*

Actions for the recovery of real property, or an estate or interest therein, or for an injury done to it, as specified in *section 4532 Gantt's Digest,* belong to common law courts

or ordinary proceedings, such as ejectment, unlawful de-, tainer, trespass, etc., and does not embrace such actions as that now before the court. *Newman on Pleading and Practice, 19 ; Butler et al. v. Bukley et al., 13 Ohio St., 519 ; Owens r. Hall, 13 Ohio St., 571 ; Hubbell v. Sibley, 4 Abb. Pr. Reps., N. S., 403; Rawls r. Carr, 17 Abb. Pr. Rep., 96; Webb r. Wright, 2 Bush. (Ky.), 126.*

The fact that the court decreed the title to be in Fletcher, and that he recover the property, can not affect the question of jurisdiction. The court having rightfully taken jurisdiction of the *person* and *cause* of *action*, the proceeding *in rem* attached as an incidental remedy, which gave the court jurisdiction of the land, though situated in another county. *Webb v. Wright, 2 Bush. (Ky.), 126; Walker, Exr., r. Ogden, 1 Dana (Ky.), 247.*

It may often happen that an action will be brought for ascertaining and settling the amount due, or for matters of jurisdiction *in personam*, and in such cases the jurisdiction is transitory as well as local. The jurisdiction of one court *in personam* draws to it the local jurisdiction *in rem* of another, and *vice versa*. The court having jurisdiction for one purpose will retain it for all purposes. *Newman on Pleading and Practice, 21, 22, 38, 39, 44, 45, 46 ; Caufman v. Sayre et al., 2 B. Mon. (Ky.), 202 ; Breckinridge's Heirs v. Ormsby, 1 J. J. Marsh (Ky.), 256, 257 ; Gantt's Dig., sec. 3640 ; Crawford, Auditor, v. Carson et al., 35 Ark., 565 ; Estes, Ad., v. Martin, etc., 34 Ark., 410 ; Denton et al. r. Roddy, 34 Ark., 648 ; Dugan v. Cureton, 1 Ark., 31 ; Conway et al., ex parte, 4 Ark., 302; Witner r. Arnett, 8 Ark., 57; Price v. State Bank, 14 Ark., 50 ; Dyer v. Jacoway, ante, 186.*

The question of jurisdiction was not raised in the court below. It is true that appellants demurred to the jurisdiction, but never insisted on it, and it was treated as waived.

And they should not be heard to urge the objection in this court for the first time, and this court will lay hold of *any shred or vestige* of chancery jurisdiction before it will dismiss the cause and send the plaintiff to begin anew in another court, and possibly find the statute of limitations has run against him. *Sexton et al. v. Pike, 13 Ark., 193; Daniels v. Street, 15 Ark., 307; Mooncy v. Brinkley, 17 Ark., 340; King et al. v. Payan & Co., 18 Ark., 583; Ryan v. Jackson, 11 Texas, 391.*

Equity always proceeds against the person; the *res* is always essentially incidental. *Green's Pl. & Pr., sec. 56; Hart v. Sanson, U. S. Supreme Court, MS. Op., January 21, 1884.*

The rule of partnership creditor's priority was one originally adopted in England in bankruptcy, and followed then in equity. Judge Story doubts its ordinary propriety. (*Story on Partnership, secs. 376, 382.*) The fluctuations of the rule were fully discussed in *Murrey v. May, 5 Johns. Chy., 73–77.* The rule is discarded in Pennsylvania. (*Bull v. Newman, 5 Serg. & R., 78.*) So in Georgia a separate creditor can levy on and sell the debtor's undivided interest without reference to claims of the firm. (*Ex Parte Stebbins v. Mason, R. M. Charlton, 77.*) The most extreme cases hold that a creditor who levies upon partnership personalty gets the interest subject to partnership accounts. *Eddie v. Davidson, Douglass, 650; Fox v. Mabury, Cooper Rep., 445;* and in equity the doctrine is well established that title passes with all that means subject to partnership accounts. (*Water v. Taylor, 2 Ves. & B., 299, 301; Bevins v. Lewis, 1 Simons, 376; Phillips v. Cook, 24 Wend., 359; Andrews v. Keith, 34 Ala., 722; Black v. Black, 15 Ga., 445; Green v. Ross, 24 Ga., 613; Gilmore v. North American Land Company, Peters C. C. Rept., 460; Case of Peter Smith, 16 Johnson, 102.*) Thus far we have treated the rule as

though it involved personalty, but where real estate is involved, as in this case, the *prima facie* presumptions are that it is held as such, and these presumptions are not overcome in this case by the evidence. When real estate is conveyed to a firm, or to the members thereof, the partners become tenants in common of the estate, and neither of them alone can convey more than an individual interest, and it can not be treated as personal property. (*Anderson v. Thompson, 1 Brockenborough, 456; Arhold v. Stephens, 2 Nev., 234; Donaldson v. Bank of Cape Fear, 1 Dev. (N. C.) Eq., 103; Wild v. Peter, 1 La. Ann.; Mc Whorter v. McMahon, 1 Clark (N. Y.), 400.*) It will never do to hold that any real estate is personalty in its broadest sense, without destroying the value of our system, which requires deeds to be recorded and stand as evidence of title. It will never do to hold that the secret equities of a partner or his creditor are any better than the secret equities of any one else. Real estate, in order to become partnership property, must be purchased for partnership purposes, with partnership funds, and by agreement at the time of the purchase that it shall be treated as partnership property; all must concur. *1 Washburn on Real Property, 668; Cox v. McBurney, 2 Sandf.; Arnold v. Wainwright, 6 Minn., 370; Lancaster Bank v. Mylor, 15 Penn. St., 544; Drewing v. Colt, 3 Sandf., 284; Cohen v. Huling, 27 Penn. St., 84; Smith v. Jackson, 2 Edwards Chy. (N. Y.), 28, 36.*

And the deed to the property must describe the parties as partners, or state the purchase to have been made by them for the benefit of the firm, otherwise the parties will be treated as tenants in common. *Ridgeway's Appeal, 15 Pa. St., 177, 181; Lancaster Bank v. Myley, 1 Pa. St., 544; Hale v. Humic, 2 Watts, 143; McDurmot v. Lawrence, 7 Serg. & Rawle, 38; 71 Pa. St., 488; Bispham's Equity Principles, sec. 513; Ford v. Heron, 4 Mumf. (Va.), 316; Dela-*

*ney v. Hutchinson, 2 Rand. (Va.), 183 ; Jackson v. Shueford, 19 Ga., 14; Gordon v. Gordon, 49 Mich., 501 ; Goodwin v. Richardson, 11 Mass., 469; Gantt's Digest, sec. 837.*

Improvements made on lands held by partners are not, nor are rents proper to be taken into partnership accounts. *Jones v. Jones, 23 Ark., 212.*

A creditor of a partnerthip, simply as such, has no lien; it is merely a right to be subrogated to the equity of a partner, and when by agreement, *bona fide*, and for value, the assets of the partnership are vested in one of the partners in consideration of his promise to pay the firm debts, the partnership creditors will have no prior lien upon such assets, either apart from, or by reason of this promise. *Barhim v. Jones, 2 Jones' Eq., 169; Hapgood v. Comwell, 48 Ill., 64; Robb v. Madge, 14 Gray, 534; Demon v. Hazard, 32 N. Y., 65 ; Howe v. Lawrence, 9 Cush., 553 ; Seegel v. Chedsey, 28 Penn. St., 279 ; Jones v. Lusk, 2 Met. (Ky.), 356.*

The doctrine that the separate debt of one partner should not be paid out of the partnership estate until all the debts of the firm are discharged, does not apply until the partners cease to have a legal right to dispose of their property as they please. It is applicable only when the principles of equity are brought to interfere in the distribution of the partnership assets among the creditors. Those principles operate on the property remaining in the possession of the partners, * * * but they do not extend to such as has been previously disposed of. *McDonald v. Beach, 2 Blackf. (Ind.), 55 ; Case, Receiver, v. Beauregard et al., 99 U. S., 119 ; Cockman v. Mauphins, Assignee, 78 Ky. (Rodman) ; Mayfield v. Barbour (Ky., Nov. 1881), 13 Law Rep, 74 ; Land v. Warring, 25 Ala., 625.*

Courts of equity will not disturb the legal title, except it is necessary to protect equitable rights of the respective partners. *Land v. Warring, supra.*

Our statute (*Gantt's Dig.*, secs. *2643*, *2649*) has provided a remedy which requires the partner, even when personalty is levied on, to give notice of his equity; and, if it is not done, the officer is to proceed to sell, and, if he sells, title passes.

A partner who permits the separate creditors of his co-partner to set off lands on execution to satisfy such co-partner's debts, and recover judgment in ejectment for its possession, without asking before levy for an account of the partnership effects, can not afterward disturb the levy on the ground that the land was partnership property. *Clark v. Lyman*, *8 Vermont*, *290*.

A party who acquires a lien on, or makes purchase of, the individual interest of a partner in partnership lands without notice that they are held as such, acquires a good title, acquit of the equities of partnership creditors. *1 Jones on Mortgages, sec. 119; Hunt v. Rankin*, *41 Iowa*, *35; Duprey v. Leavenworth*, *17 Cal.*, *262; 20 Conn.*, *130*.

Again, the parties in this case all derive their title from C. R. Vaughan, as *an individual*, neither of them claim from him as *partner*, or from *the partnership;* therefore neither can dispute the title of C. R. Vaughan. This point has been fully settled by this court in the case of *Wilson and wife v. Spring*, *38 Ark.*, *184; and Stafford et al. v. Watson et al.*, *MS. Opinion*, delivered October 20, 1883. These cases are directly in point, and, we think, settle this case.

The fact that William R. Vaughan was a partner, does not change the nature of the case; he purchased as an *individual*, and the case is the same as if the deed from C. R. Vaughan had been made directly to English, Rozelle or any third party. The judgment to Allen & Co. was rendered after both of the Vaughans had parted with their interest in the property, and constituted no lien.

STATEMENT.

W. F. HENDERSON, Special Judge.   On the seventeenth day of January, 1876, the appellee, Thomas Fletcher, as executor of Richard Fletcher, filed his complaint in the Pulaski Chancery Court, alleging, in substance, the following facts :  On the first day of February, 1872, William R. Vaughan and C. R. Vaughan purchased a plantation, known as the Workman place, from Jones, McDowell & Co., and took an absolute deed therefor, and executed a mortgage back, with power of sale, to Jones, McDowell & Co., for the balance of the purchase money, of that date.   The deed to the two Vaughans, on its face, was to them as tenants in common, and the mortgage to Jones, McDowell & Co., was executed in like manner.   On the eleventh day of October, 1873, Thomas Fletcher, as executor of the will of Richard Fletcher, deceased, recovered a judgment in the Pulaski Circuit Court against C. R. Vaughan, for the sum of four thousand and fifty-six dollars and thirty-three cents.   On the seventh day of November, 1873, C. R. Vaughan conveyed his half interest in and to the land to William R. Vaughan, together with all his interest in the crop, stock, etc., on the plantation.   On the eleventh day of November, 1873, William R. Vaughan conveyed the entire farm, with all the crop, stock, etc., to E. H. English.   On the sixteenth day of March, 1874, English conveyed all the land, crop, stock, etc., to George F. Rozelle. Rozelle conveyed to Adams, and Adams to White.   On the third day of March, 1874, Fletcher caused execution to be issued on his judgment, and levied on an undivided half interest in the land as the property of C. R. Vaughan. Fletcher purchased at the execution sale, and, no redemption having been made within the year, a deed was executed and delivered to him by the sheriff on the fifteenth day of December, 1875.   Jones, McDowell & Co. gave no-

Jones, McDowell & Co. v. Fletcher.

tice that they would sell the lands under the power contained in the mortgage to them on the twenty-fourth day of January, 1874. The mortgage was made to secure a note of six thousand dollars, dated February 1, 1872, for balance of purchase money on the place. This note was payable eleven months after date, with interest at the rate of twenty per cent. per annum until due, and thirty per cent. after due till paid. On the twenty-sixth day of February, 1874, Jones, McDowell & Co. transferred and assigned this mortgage to Rozelle & Young. That Young claimed no interest under the mortgage, and was merely a nominal party to the transfer. The complaint charges that the consideration from George F. Rozelle to Jones, McDowell & Co. for the transfer of the mortgage by them to him, if any was paid, was the money and funds of C. R. and William R. Vaughan, and that this transfer was taken in the name of George F. Rozelle and Wm. N. Young for the purpose of aiding William R. and C. R. Vaughan in hindering and delaying their creditors. That the conveyances from C. R. to William R. Vaughan, and from William R. Vaughan to E. H. English, and from English to Rozelle, were made for the fraudulent purpose of hindering, delaying and defeating the plaintiff in the collection of his debt, and that, whatever interest they acquired under these conveyances, they took with notice of plaintiff's judgment lien and the fraudulent purpose of the Vaughans as grantors. It is alleged that the mortgage debt had been paid off by C. R. Vaughan, or some of the defendants for him, and that Jones, McDowell & Co. hold the same for him, in trust, or in trust for some of the defendants. The complaint contains an offer to redeem in the following terms: "If he is mistaken in the allegations as to the payment of the said mortgage, by or in behalf of the said mortgagee, Vaughan, and anything is really and honestly due to said Jones, Mc-

Dowell & Co., your orator is ready, and has always been ready ever since his said purchase by him, to pay half of the same, and now is ready and offers to pay his undivided half of the same, or such part as the said C. R. Vaughan was liable for, under the mortgage, or the whole of said mortgage." That Rozelle, Adams or White, or some of the defendants, are in possession of the whole of said land, and refuse to deliver the plaintiff's half to him, or to permit him to participate in the rents and profits. That this suit was in aid of an action at law then pending in the Pulaski Circuit Court for the recovery of these lands.

Dudley E. Jones, Charles N. McDowell and Cyrus Bussey, partners, as Jones, McDowell & Co.; E. H. English, George F. Rozelle, John D. Adams, A. P. White, C. R. Vaughan and William R. Vaughan were made defendants. The prayer is that each and all of the defendants be compelled to discover and set forth what amounts have been paid upon the mortgage, whether any of the defendants had ever paid Jones, McDowell & Co. any money under pretense of purchasing the said mortgage of them with the understanding that they, in consideration thereof, should hold the same in trust for them or some of them, and whether the sale, if made as advertised, is not for their benefit. That Jones, McDowell & Co. be enjoined from selling the lands, or the undivided half interest so purchased by plaintiff at the said sale, until said action at law can be tried, or until the matters contained in the complaint can be inquired into in that court, and for other relief.

Rozelle, Adams, White, C. R. and William R. Vaughan, filed a joint and separate answer, in which they admitted the grant of letters testamentary and the recovery of the judgment as stated in the complaint. But deny that C. R. Vaughan, at the date of the rendition of the judgment, was the owner in fee of an undivided half interest of the

lands as a tenant in common with W. R. Vaughan, as charged. It is alleged that before the date of the recovery of the judgment, William R. and C. R. Vaughan were the owners of the lands as partners, and continued so until some time thereafter. That they were partners in business in buying and selling agricultural lands, raising crops of cotton and other produce thereon, and selling the same, and in buying machinery and necessary implements for the cultivation of the lands so purchased or leased.

That they were equally interested in the business, and that the capital stock consisted of the lands, machinery, implements, etc , necessary to carry on said business. That they owned and had other lands rented in addition to this place, all of which were embraced in the partnership. That all their business, including the price paid for the Workman place, was kept as one account. They deny that C. R. Vaughan had any interest in the place except as a partner. That there was an extensive and unsettled account between the partners which had never been adjusted between them. They allege the insolvency of the parnership, and of the individuals composing the firm in the fall of 1873, and that the firm assets had been sold in payment of the firm debts. That no settlement had ever been made between the partners, because their assets were gone. It was also stated that notwithstanding no accounting had ever taken place between the partners, it was a fact that C. R. Vaughan was largely indebted to his partner, and that such indebtedness exceeded C. R. Vaughan's interest in the partnership property. They set up the mortgage in favor of Jones, McDowell & Co., assigned to Rozelle, and say that a large sum is due. They admit that William R. Vaughan paid no money to C. R. Vaughan for his interest, but insist that the five thousand dollars named as the consideration in the deed was credited by

him on the partnership account. They deny that the money paid by Rozelle to Jones, McDowell & Co. was that of either of the Vaughans, or that the conveyances were made to hinder or delay their creditors. They say that the conveyance by C. R. to W. R. Vaughan was made in good faith and for a valuable consideration. They demur and assign for cause:

1. The complaint does not state facts sufficient to constitute a cause of action.

2. For want of equity.

3. The court has no jurisdiction of the suit.

The plaintiff afterwards filed an amendment to the complaint, and charged therein that the Vaughans owned and held the lands as tenants in common and not as partners. That the purchase money paid by them was not paid out of a common or partnership fund, but was paid by them severally, out of their separate funds, and that if the Vaughans were partners, the debt held by Fletcher was a partnership debt. He charges that the judgment was for rent of the Dick Fletcher plantation for the years 1871, 1872, in Pulaski County. That the lands were used and the crops applied in this instance in the same way other lands and crops of the said Vaughans were used, about which a partnership is asserted. Prayer as in the original complaint, and that he recover an undivided half of the lands. Rozelle answered the amendment, denying the statements contained in it, and asserted more fully the purchase of the lands with partnership funds and their use for partnership purposes. Rozelle, Adams, White, William R. and C. R. Vaughan filed an amendment to their answer, in which they set up a judgment, execution sale and purchase by Rozelle of these lands, under a judgment recovered in the United States Circuit Court for the Eastern District of Arkansas, in favor of Thomas H. Allen & Co.,

against the two Vaughans as partners, and assert title under a marshal's deed procured in this manner, as superior to the title of the plaintiff.

The Chancellor decreed that Fletcher, by his purchase, acquired a half interest in the lands, subject to whatever might be found due on the mortgage, and ordered the Master to take and state an account of the amount due, and to take an account of rents received by the defendants, and apply the same to the mortgage in payment thereof. The report of the Master shows a sum on account of rents in excess of the balance due on the mortgage. The Chancellor found as a fact that Fletcher had no actual notice of the partnership, and that there was nothing to import constructive notice to him. And that although as between the Vaughans a partnership might have existed, it could not be asserted as against Fletcher or any third person without notice. The decree sets aside all the deeds from C. R. Vaughan down to that of A. P. White, and awards a writ of possession to appellee.

### OPINION.

By the third section of an act of the Legislature entitled "an act to define the boundaries of Pulaski and other counties," approved December 7, 1875, the lands embraced in this controversy were detached from Pulaski and added to the territory of Saline County. It will be seen from the date of the filing of the complaint that these lands were not in Pulaski County when the suit was commenced. It is again urged by the counsel for appellants, after the overruling of the motion to dismiss for want of jurisdiction, that the Pulaski Chancery Court could not entertain jurisdiction on the facts stated in the complaint. The argument on the jurisdictional ground is pressed upon us with so much zeal and ability that we feel constrained to

1. JURISDICTION:

Local: Transitory.

go somewhat at length into a further consideration of this question. The facts material and important to a proper determination of the question are: The defendants were served with process in Pulaski County. The mortgagees, under the power contained in the mortgage, were about to sell the lands in this county. The principal object of the plaintiff's suit, as disclosed by his original complaint, was to have an account stated of the balance, if anything, due on the mortgage, and to redeem in part, or the whole, as might be directed by the Chancellor; to enjoin the sale as to the half interest, and to set aside certain deeds made to hinder and delay him in the collection of his debt, and the recovery of the lands in his action at law.

Looking at the pleadings as a whole, on the part of the plaintiff, it is argued, that the chief or principal object of this suit was the recovery of real property, or of an estate or interest therein within the meaning of section 4532 Gantt's Digest, which is as follows:

"Actions for the following causes must be brought in the county in which the subject of the action, or some part thereof, is situated:

"I. For the recovery of real property, or of an estate or interest therein.

"II. For the partition of real property.

"III. For the sale of real property under a mortgage, lien, or other incumbrance or charge.

"IV. For an injury to real property."

When the suit was commenced the Circuit Court of Saline County was the proper and only forum in which these lands or of an estate or an interest therein could have been recovered. But the first and most important question to be determined, is, was the main or leading object of the plaintiff's suit, as indicated by the scope and purposes of his original complaint, the recovery of these lands, or of an

estate or an interest therein? It is certainly true that the
claim of the plaintiff was and is, that he is legally and equi-
tably entitled to an undivided half interest in these lands,
and it is conceded that no part of them are in Pulaski
County. It is very clear that the Legislature intended, in
the adoption of section 4532 Gantt's Digest as a part of our
*code procedure*, to make all actions, whether at law or in
equity, where the judgment or decree is to operate directly
upon the estate or title, local, and to restrict the remedy to
the proper tribunal of the county where the subject of the
action, or some part of it, is situated. All such actions,
whether by name foreclosure, partition, ejectment, or with-
out any special designation as to title, whether expressly
mentioned in the statute or not, are local, within the mean-
ing of this section. The courts will look to the effect of
such judgments and decrees, and endeavor to give full force
to the statute, and carry out the defined policy of the legis-
lative department in limiting the remedy to the proper
courts of the county where the land lies.

The chief question is, and must be, in its ultimate form
and effect: Does the decree appealed from operate direct-
ly and primarily upon the estate or title, or does it oper-
ate alone upon the persons of the appellants, and only indi-
rectly and incidentally upon the estate or title? To deter-
mine this question it is important to ascertain when, how,
and for what purposes the court acquired jurisdiction, if at
all. It will be seen that until the coming in of the amend-
ment to the complaint, no direct effort was made by any
allegations in the original complaint or prayer for judg-
ment in which a recovery of the lands, or of an estate or
an interest therein, was sought. The plaintiff alleged that
he had succeeded, through a judicial sale, to all the rights
of C. R. Vaughan, one of the mortgagors, in a mortgage
which was about to be carried into effect by a sale in Pulaski

County. That the mortgage had been paid off; or, if not fully paid, he would redeem as to the balance found due upon an accounting. He sought to have certain convey- ances set aside and canceled on account of their having been made to hinder and delay creditors, and especially himself. He prayed that the sale be enjoined, as to an un- divided half interest in the lands, until his equities could be inquired into. The defendants were served with pro- cess in Pulaski county, and answered the complaint on the merits, reserving exceptions by way of demurrer to the jurisdiction of the court. But it is suggested by counsel for appellants, that the plaintiff elected to amend his com- plaint, and to enlarge the scope of his remedy, so that the suit as a whole was an action to recover real property, or of an estate or an interest therein, brought in a county where no part of the subject of the action was situated.

It is also urged that the jurisdiction of the court over the subject of the action, if acquired at all, must have been in consequence of the primary and principal object of plain- tiff's suit, not as a mere incident to an asserted jurisdiction *in personam*, but as an original jurisdiction *in rem*. It would seem to be clear, if we consider the entire pleadings as stating plaintiff's whole case, that the principal or chief object of his suit was the recovery of an estate in lands ly- ing in Saline County. But appellee contends that the court having properly acquired jurisdiction over the persons of the defendants and the cause of action for a personal judg- ment or decree, that jurisdiction over the lands attached as incident to the principal or primary objects of his suit.

We are referred, by appellant's counsel, to the case of *Jacks v. Moore, 33 Ark., 31*, as authoritatively settling the question of jurisdiction raised here. That was an action of trespass brought in the Circuit Court of Phillips County for a trespass committed on lands lying in Lee County, in "cutting

timber growing thereon, and otherwise injuring the land."
The court says:  " The action ought to have been brought in
Lee County where the land is situated.   The language of
the code is unequivocal.   The injury and the action is local,
and was so at common law, and  the code simply follows
the common law."  That case fell directly and palpably
within the very terms of the  statute, and  no question is
made but that it was correctly decided.   We are, however,
unable to perceive any analogy between this case and that.
Nor are we disposed to follow counsel in  his  speculations
and possible deductions flowing from it.   This suit  is  not
founded upon any claim even remotely connected  with an
injury to real property.   If any argument or reason as  ap-
plied to this, can  be deduced from that, it is against rather
than favoring  the  position  of appellants.   That case
declares that the  code provision follows the  common  law,
and is simply declaratory of  what the law was before.

It  is very  well known  that  the  section of our statute
above quoted  is  an  exact copy  of a  corresponding  code
provision  in  the  Code of  Kentucky, in force  there when
we adopted ours.

It is important to ascertain what interpretation  has been
placed upon this provision by the courts of that State, and,
if sound, to adopt it as the true construction of ours.

Mr. Newman, in his Pleadings and  Practice,  comment-
ing  on this provision, says:   " Actions for the recovery of
real property, or of an estate or interest therein,  or for an
injury done to  it, as  specified in the section  of  the  code
above quoted, are subjects belonging mostly to the common
law courts, or ordinary proceeding, while the  partition of
real property and the  sale of it under  a mortgage lien, or
other incumbrance or charge,  belong  chiefly to a court of
equity."  (*Newman  Pleading  and  Practice, page  19.*)   At
page 38 he says:   " But, in  the  absence of any  statutory

enactment, the general rule is perhaps still to be observed, that where the judgment or decree is for the doing of an act which may be done anywhere, the person of the defendant, wherever he may be served with process, gives jurisdiction to hear and determine the controversy. All actions, therefore, for the recovery of money, settlements of accounts between partners or others, the specific execution or rescission of contracts for land, or compensation for its deficiency, and also bills of discovery under the former practice, and actions to cancel deeds or other instruments of writing, where not otherwise provided by statute, are transitory. Even an injunction to stay proceedings on a judgment, as it operates on the person enjoined and not directly on the judgment itself, nor on the court that rendered it, would be transitory, were it not for the express requirement of the statute." Citing *Dunn and Wife v. McMillan, 1 Bibb, 409; Mason v. Chambers, 4 J. J. Marsh, 407; Sharp v. Pike's Admr., 5 B. Monroe, 157; Cowan v. Montgomery, 7 J. J. Marsh, 299; Care v. Trabue, 2 Bibb, 444; Owings v. Beall, 3 Little, 103; Lewis v. Morton, 5 B. Monroe, 3; Williams v. Burnett, 6 Me., 323; Parrish v. Oldham, 3 J. J. Marsh, 535; Dickens v. King, Ib., 591; Taylor v. Bate, 4 Dana, 198; Walker's Exrs. v. Ogden, 1 Dana, 247; Kendricks v. Wheatley, 3 Dana, 34; Austin's Heirs v. Bodley, 4 Monroe, 434.*

At page 45 Mr. Newman says: "Other cases may arise in which jurisdiction of one court *in personam* draws to it the local jurisdiction *in rem* of another. It may often happen that the courts having local jurisdiction of the controversy in part, will dispose of the whole transaction, notwithstanding it involves the exercise of a jurisdiction which in part belongs to another tribunal." And in support of this position cites *Webb v. Wright, 2 Bush. (Ky.), 126.* See, also, *Butler et al. v. Buckley et al., 13 Ohio*

*St., 519; Owens v. Hall, 13 Ohio St., 571; Hubbell v. Sibley, 4 Abb. Pr. R., U. S., 403; Caufman v. Sayre et al., 2 B. Monroe, 202; Breckenridge Heirs v. Ormsby, 1 J. J. Marsh, 256.*

In order to sustain the jurisdiction over the lands another general rule is sought to be applied here, which is, that a court of equity, when it properly acquires jurisdiction over a cause for one purpose will usually retain it and decide all questions presented. *Estes, Ad., v. Martin, Ad., 34 Ark., 410; Crawford, Auditor, v. Carson et al, 35 Ark., 565; Price v. State Bank, 14 Ark., 50; Heilman v. Martin, 2 Ark., 168; Robertson v. Thompson, 3 Ind., 190; Morgan v. Morgan, 2 Wheaton, 290; Coway et al., ex parte, 4 Ark., 302.*

In further support of the jurisdiction, the case of *Denton v. Roddy, 34 Ark., 648*, is relied upon. In that case Justice EAKIN said: "If the complainant can successfully attack the decree upon any ground recognized in equity, she will have the right to do so in the Woodruff court, as incident to and connected with the principal end of her bill, to wit, to be endowed of lands in Woodruff County. The jurisdiction of the court for that purpose, will draw to it the jurisdiction to remove the impediment of a fraudulent decree of another tribunal."

EAKIN, J., in *Dyer v. Jacoway, ante, 186*, says: "The suit was properly brought in the forum of the administration. It is competent to the court, having the parties before it, to do full justice, and to that end it may make orders affecting real estate lying out of the district. The two districts of Yell County are as distinct counties. This by special statute."

This was a suit by creditors of an estate against the administrator, his sureties, and the wife of the administrator, to set aside for fraud the settlements made by the adminis-

trator to hold the sureties liable, and to subject real estate of the wife of the administrator, to any decree rendered. The real estate was in the Dardanelle District of Yell County, and the suit was brought in the Danville District, the forum of the administration, etc.

In *Walker's Exrs. v. Ogden, 1 Dana, 247*, Chief Justice ROBERTSON, in speaking of the power of a Chancellor to award restitution of lands to a vendor, said: "Restitution is, *per se*, a matter of local jurisdiction, and if it could be entertained by the Circuit Court of Bourbon, it must be so sustained only as incidental to, or in consequence of, some other matter which gave jurisdiction to that court over the parties *and their contract.* ·

In *Kendricks et al. v. Wheatley, 3 Dana, 34*, it was held that a suit for the rescission or specific execution of a contract for land, the venue was not local but transitory, and that the defendant must be summoned in the county or enter his appearance, to give jurisdiction. Fictitious allegations, as of a lien upon land, with a prayer to enforce it by sale, though such matter is local, will not confer jurisdiction when it appears from the whole bill that no decree can be rendered on such allegations.

*Morgan & Hoggins v. Masterson, 11 B. Monroe*, was a bill filed in the Madison County Circuit Court to impeach and set aside an alleged fraudulent and fabricated will of one Mrs. Shackelford, who was domiciled in Lincoln County at the date of her death, owning property there, in which county the alleged forged will was admitted to probate. The plaintiffs claimed as heirs to Mrs. Shackelford, and also under the will. The defendant, Masterson, was the executor of the will and a devisee. The testatrix died owning lands in Madison County from which Masterson had collected rents as executor. The objects of the bill were to set aside the will and to annul its probate in Lin-

coln County; to charge Masterson with the rent of lands in Madison County, and to have partition of the lands in that county. Defendant set up the will and its probate in Lincoln County and demurred to the jurisdiction of the court.

It was conceded in argument in that case, that the jurisdiction to determine the principal question was in the Lincoln, and not in the Madison Circuit Court, according to the authority of *McCall and Wife v. Vallandingham, 9 B. Monroe, 449.* But two grounds were insisted upon in favor of the jurisdiction: First—That the objection to the jurisdiction had been waived. Second—That the Madison Circuit Court had jurisdiction to settle with the executor for rents and profits of the land, and to decree partition thereof among the claimants; and having jurisdiction for these purposes, and especially to decree partition which is also local, that it thereby acquired jurisdiction to inquire into the validity of the will, that being necessary to be done before partition could be made.

SIMPSON, Judge, in delivering the opinion, after showing that the objection to the jurisdiction had not been waived in disposing of the other ground, said: "If the admixture of subjects concerning which the court had jurisdiction, could operate to transfer the jurisdiction as to the others, from the court to which they properly belonged, and impart it to the court where the suit was instituted, there would be no difficulty in effecting a change of jurisdiction in almost every case in which there might be a contest about a will. The real question presented by complainant's bill is in relation to the validity of the will. All the other questions are subordinate to that one, and to a great degree dependent upon it. That question ought to have been tried and determined in the proper court, and when that had been done, a suit for partition in the county where the land is situated might have been brought there."

The Supreme Court of the United States, in *Hart v. Sansom*, a recent case, published in *No. 8, vol. 29, Albany L. J.*, uses the following language : "Generally, if not universally, equity jurisdiction is exercised *in personam*, and not *in rem*, and depends upon the control of the courts over the parties, by reason of their presence or residence, and not upon the place where the land lies in regard to which relief is sought. Upon a bill for the removal of a cloud upon the title, as upon a bill for the specific performance of an agreement to convey, the decree, unless otherwise expressly provided by statute, is clearly not a judgment *in rem* establishing a title in lands, but operates *in personam* only." See, also, *Massie v. Watts, 6 Cranch, 148; Orten v. Smith, 18 Howard, 263; Vandever v. Freeman, 20 Tex., 334.* Our statute on this subject is as follows : "In all cases where the court may decree the conveyance of real estate, or the delivery of personal property, they may by decree pass the title of such property, without any act to be done on the part of the defendant, where it should be proper, and may issue a writ of possession if necessary to put the party in possession of such real or personal property ; or may proceed by attachment or sequestration." *Section 2640 Gantt's Digest.*

It will be seen that, in the case of *Hart v. Sansom, supra,* the court says that the decree, unless otherwise *expressly provided by statute*, is clearly not a judgment *in rem* establishing title in land, but operates *in personam* only. The language of our statute is : "Where the courts may decree the conveyance of real estate, they may by decree pass the title of such property without any act to be done on the part of the defendant, when it shall be proper, and may issue a writ of possession." The decree in this case did vest title in the plaintiff without any act to be done on the part of the defendant. It was made in strict conformity to

the statute, and if it be not a judgment *in rem*, it is difficult to conceive an instance in which such an effect can be given under a judgment or decree.

We can not say, in the face of this statute and the decree as found in the record, that it is a judgment *in personam* only. Nor was it the exercise of a merely incidental jurisdiction *in rem*. If the court acquired jurisdiction for the purpose of decreeing title, and passing the estate in the lands to the plaintiff and awarding him a writ for its possession, as prayed in the amendment to the complaint, the incident became at once the chief or principal object of the suit. All of the grounds for the interference of a court of equity set up in the original complaint were subordinate to the claim of title and the right to be put into possession. These were from that time forward the chief objects of the suit. To hold that jurisdiction was acquired as an incident to the other grounds stated for a purely personal judgment, would, in our opinion, contravene not only the letter, but the spirit of the section of the statute in question. Nor can the old equity doctrine found in *Penn v. Baltimore, 1 Vesey, 444; Anglasie, Ex., r. Maschamp, 1 Vern., 75; Massie r. Watts, 6 Cranch, 148,* be appealed to for the purpose of sustaining the jurisdiction. The judgments in these cases were *in personam*. The power of the court was exerted through the person of the defendant. Our statute has modified that rule as to lands situated in this State. But it does not follow from what has been said that in no case would the incidental jurisdiction arise.

It was properly asserted in *Dyer r. Jacoway, supra.* The court acquired jurisdiction over the parties by service of process in this county and by their appearance to the action, and to the extent of granting relief *in personam*, it was properly exercised. The Pulaski Chancery Court had jurisdiction to enjoin the sale, to have an account stated of

JURISDICTION: Acquired by service of process, and not ousted by amendment of local jurisdiction.

the balance due on the mortgage, to cancel the conveyance, and to inquire into the partnership matters brought before it. The filing of the amendment did not oust the court of a jurisdiction already acquired, but it had none to decree the title and award the writ of possession, and it was error to do so.

2. EXECU-TION:

Partner's interest in land, subject to.

It will be seen from the statement of facts that the appellants insisted in their answer that the plaintiff acquired no lien upon the lands by the judgment against C. R. Vaughan, although at that time the lands were in Pulaski County, because they belonged to C. R. and William R. Vaughan, not as tenants in common, but as partners; that they were purchased with partnership funds and used for partnership purposes, within the terms of the partnership; that the partnership and the partners were insolvent at the date of the rendition of the judgment and have been ever since. It is further argued that the proof fully sustains the claim.

3. PARTNER-SHIP:

Equity of partnership creditors to assets: How lost.

Without going fully or minutely into the evidence, it becomes important to ascertain and determine whether or not the consequences must follow of a denial of all right to the appellee under his purchase. It is not denied that within less than a month after the recovery of the Fletcher judgment against C. R. Vaughan, and while such interest as he might have had in the lands, whether that of an undivided half, as a tenant in common with his brother William R., or his contingent or possible share after the payment of all partnership debts, still whatever interest he had, it was an interest in lands lying in the county where the judgment was rendered, and was bound by the lien of that judgment. Fletcher clearly had a right to levy upon and sell the lands if they belonged to C. R. Vaughan as a tenant in common. He had also a right to levy upon them if they belonged to the partnership. In the former

case he would acquire a title to a half interest in the property thus purchased. In the latter he took the place of the debtor partner, subject only to the demands of partnership creditors, whose claims will be preferred to that of an individual creditor, provided the property remains the joint estate of the partners, in such condition as to enable the partners to assert their equities for the benefit and protection of that class of creditors. If, however, the joint estate was severed by the act of the partners in such manner as to cut off the right of the partners to assert their equities over the partnership estate, the equity of the partnership creditors is also gone.

C. R. Vaughan, by deed of November 7, 1873, conveyed all the interest he had in the lands, crop, stock, etc., to William R. Vaughan for five thousand dollars, which he received in the way of credits on debts due by him to Rozelle.

This dissolved the partnership to the extent of these lands, crop, stock, etc. He thereby parted with all right, interest and power of control over this property. It was not conveyed in trust or in any way bound for the payment of any debt or charge except such as might be lawfully asserted. He had no right thereafter to insist, in a court of equity, that the firm owed partnership debts, and to have the lands applied to their payment. His equity as a partner was gone. The Chancellor found that the conveyance was made in good faith and for value. It is true that the *bona fides* of the sale was attacked by the complaint, but there is perhaps little or no proof to sustain the allegations. The plaintiff purchased at a sale under his judgment, and procured a sheriff's deed in regular form. Assuming the partnership to have been proven (of which we entertain some doubt) what estate or interest did Fletcher buy at the sale? Did he buy subject to an ac-

29

counting between the partners and to the partnership
debts, or did he buy whatever interest or estate C. R.
Vaughan had, with the superior claim of the partnership
creditors cut off by the act of the partner in selling, or did
the sale in any manner affect the power of the other part-
ner to dispose of the property in payment of a partnership
debt, and thereby defeat the lien of plaintiff's judgment,
and cut off all further remedy on the part of Fletcher to sub-
ject the estate of C. R. Vaughan to the payment of his debt?

Very great confusion and conflict of judicial opinion
may be found on this and other questions of a similar
character growing out of the respective rights and reme-
dies of individual and partnership creditors against the
property of insolvent partners.  The general rule undoubt-
edly is, that a creditor of one of the partners buys at an
execution sale with the rule *caveat emptor* before him, and
that he must take notice of all equities, whether liens,
strictly speaking, or not, and that at such purchase he
buys only the share or interest of the debtor partner. In
*Allen v. McGaughey et al., 31 Ark., 252,* the court said:
" The defendant claims as purchaser at an execution sale,
to which the rule *caveat emptor* applies. He gets no war-
ranty of title by his deed, but takes the estate incumbered
with all the equities upon it, at the time of his purchase,
such, only, as the defendant in the execution had, charged
with all the equities that might be asserted against him."
See, also, *Byers v. Fowler, 12 Ark., 286; Miller v. Fraly, 21
Ark., 22; Pindall et al. v. Trevor & Colgate, 30 Ark., 249.*
The contention in this case is, that at the time Fletcher pur-
chased, the lands were affected with a trust or lien in favor
of the partnership creditors of C. R. and W. R. Vaughan.

Creditor's
equity en-
forced only
through
equity of
the part-
ners.

The trust or equity of the partnership creditors against
property of the partnership is not a lien or trust, such as a
court of equity can recognize and enforce except through

the partners, to whose equities they are, under some circumstances, subrogated. If, therefore, at the time the superior claim of the partnership creditor is asserted by him, the partners are not in a condition by reason of any act of theirs to assert this right, the derivative equity in favor of the partnership creditor will be lost. They can not stand in a higher or more favorable position than that of the partners. The equity of the partnership creditor is worked out by and through that of the partners.

In *Case v. Beauregard*, *99 U. S., 119*, Justice STRONG, delivering the opinion, said: "No doubt the effects of a partnership belong to it, so long as it continues in existence, and not to the individuals who compose it. The right of each partner extends only to a share of what may remain after the payment of the debts of the firm, and the settlement of its accounts. Growing out of this right, or rather included in it, is the right to have the partnership property applied to the payment of partnership debts in preference to those of any individual partner. This is an equity the partners have as between themselves, and in certain circumstances it inures to the benefit of the creditors of the firm. The latter are said to have a privilege, or preference, sometimes loosely denominated a lien, to have the debts due to them paid out of the assets of a firm in course of liquidation, to the exclusion of the creditors of the several members. This equity, however, is a derivative one. It is not held or enforceable in their own right. It is practically a subrogation to the equity of the individual partner, to be made effective only through him. Hence, if he is not in a condition to enforce it, the creditor of the firm can not be. It is indispensable, however, to such relief that the partnership property should be within the control of the court, and in the course of administration, brought there by the bankruptcy of the firm, or by an assignment, or by the

creation of a trust in some mode. So, if before the interposition of the court is asked, the property has ceased to belong to the partnership, if by a *bona fide* transfer it has become the several property, either of one partner or a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end. It is, therefore, always essential to any preferential right of the creditor, that there shall be property owned by the partnership when the claim for preference is sought to be enforced." See, also, *Ex Parte Ruffin, 6 Ves., 119; Price v. Bernard et al., 20 Vt., 479; Appeal of the York County Bank, 32 Penn. St., 446.*

The only exception or qualification to this rule is, that of the *mala fides* of the retiring partner. *Kimball v. Thompson, 13 Metc. (Mass.), 283; Allen v. The Center Valley Company et al., 21 Conn., 130; Ladd v. Griswold, 9 Ill., 25; Smith v. Edward, 7 Humph., 106; Robb et al. v. Mudge and another, 14 Gray, 534; Baker's Appeal, 21 Penn. St., 76; Sigler & Richey v. Knox County Bank, 8 Ohio St., 511; Wilcox v. Kellogg, 11 Ohio, 394.*

In such case the joint estate is converted into the separate estate of the assignee by force of the contract of assignment. And it makes no difference whether the retiring partner sells to the other partner or to a third person, or whether the sale is made by him, or under a judgment against him. In either case the equity is gone.

In *Vosper v. Kramer et al., 31 N. J. Eq., 420,* in speaking of the lien of the partner, the Chancellor used the following language: "This lien may be lost by the unqualified sale and transfer by the partner of his interest in the partnership to his copartner, whereby the property before that time held by them jointly, becomes the several property of the latter." To the same effect see *Giddings v. Palmer, 107 Mass., 269; Robertson v. Baker, 11 Fla., 192; Croone*

*v. Bivens, 2 Head., 339; West v. Chasten, 12 Fla., 315; Griffith v. Buck., 13 Md., 102; Lindley on Part., vol. 2, pp. 683–4.* The answer of the defendants denies the charges of fraud made in the complaint, and alleges that the conveyance made by C. R. to W. R. Vaughan was in good faith, and for value, and the Chancellor so finds as a fact. The *bona fides* of that sale is not now called in question on this appeal, and, for the purpose of disposing of this question, we will treat it as a sale made in good faith. Whatever may have been the objects or purposes had in view by C. R. Vaughan in selling, and W. R. in buying, it is quite clear that C. R. Vaughan had a legal right to sell such estate as, under the rules of law applicable to the condition of the property, he might own at that time. No superior legal title is shown in any other person. Nor was the Fletcher judgment anything more than an incumbrance upon the title. The fee was in the partnership, which was composed of the grantor and the grantee, and we can not question the operative effect or efficacy of the deed to pass the title to William R. Vaughan, subject to the outstanding liens of Jones, McDowell & Co. and Thomas Fletcher. Both the Vaughans say in their depositions that the partnership ceased in the latter part of 1873. When, therefore, this suit was instituted, no such partnership was in existence. It had been dissolved for more than two years.

When C. R. Vaughan conveyed to William R., and when William R. conveyed to E. H. English, the lien of the Fletcher judgment was in force and bound such interest as C. R. Vaughan had to the extent of creating a lien for the amount thereof. It was a valid transfer for the purpose of severing the joint estate, and did have that effect, as between the partners.

This disposes of the defense based upon the partnership, unless the Marshal's deed held by Rozelle, under the sale

by Allen & Co., on their judgment in the United States Court, shall be deemed a superior title to that of Fletcher.

Without repeating the facts, it is sufficient to say that Allen & Co. recovered a judgment in the early part of 1874, in the United States Circuit Court for the Eastern District of Arkansas, against the Vaughans jointly, and proceeded to levy upon and sell the plantation in question to satisfy that judgment.   Rozelle bought at the sale, and procured a deed which is exhibited and relied upon as a superior title to that of the appellee, because it springs out of a partnership debt, and that, as a partnership creditor has a preferential right to satisfaction out of partnership assets, his title, although junior in point of time, is superior in equity.   The point just ruled confronts us again, for it is only another mode of stating the claim for preference.

The indebtedness upon which Allen & Co. recovered their judgment, was an obligation dated January 1, 1874. The debt may have accrued during the existence of the partnership, but the evidence of it was made to bear date after the dissolution of the firm.

The partnership had been dissolved and a considerable portion of the assets had been sold, and this plantation had become the property of two different purchasers who held it in severalty, when the note was given, and the judgment recovered.   Had Allen & Co., immediately after the recovery of their judgment, filed a bill to marshal the assets of the late firm, and in  that proceeding had attempted to assert the former lien of the partners, it will be seen, by an examination of the authorities above cited, that the joint estate in these lands having been severed by the deed, the lien of the partner was gone, and with that the derivative equity of the creditor founded upon it.

In a recent decision of the Court of Appeals of Kentucky this subject was very thoroughly discussed.   It was

said in that case, that "no act of an execution defendant, while execution is in the hands of an officer, can defeat the lien acquired upon his property by delivery of the writ." It was also declared that creditors of a partnership have no lien upon partnership property except such as is derived through the partners—and that, where partners from any cause are in a position that they can not assert their lien upon the partnership effects, the creditors of the firm are equally unable to do so. *Couchman's Admr. v. Maupin et al., Rodman's R., 78 Ky., 36, and authorities there cited.*

It can make no difference whatever that one of the partners did what it is possible a court of equity would have compelled both partners to do, had the firm remained in business or in existence at the time the partnership creditor attempted to seize and sell what had before that time been partnership property. Nor could either party have defeated this equity in behalf of partnership creditors by any act done *mala fides.* To hold otherwise would certainly place many embarrassing restraints upon the alienation of property, and charge it with secret liens without any compensating good results. As the law now stands the favor shown partnership creditors over individual creditors of a partner is well recognized and enforced. But the creditor of one partner, in cases like the present, if he is sufficiently diligent, may be permitted to reap the fruit of his vigilance.

A large mass of evidence was taken both before and after reference to the Master. So much as may be necessary to determine whether or not the appellant's exceptions to the Master's report should have been sustained, will be looked into.

Jeff Fletcher, introduced on behalf of the plaintiff, testified that he was well acquainted with the Workman place.

That he had resided in the same neighborhood for many years; had been engaged in planting or farming for twenty-five years on lands of a similar kind to that of the Workman place. That he had owned and cultivated from one hundred and fifty to six hundred acres near this place, and in short had every possible opportunity for knowing the true rental value of the lands for the years 1876 to 1881 inclusive, covered by the final report of the Master. This witness places the rental value, where the lessee or tenant keeps the lands in repair, at from five to six dollars per acre, and says that he would not give over five dollars for any land. Isbell, sworn on behalf of the defense, now occupying under a purchase from Adams, says that it is worth about five dollars per acre. Reynold places the value at about seven dollars an acre, but thinks five or six high enough where tenant makes annual repairs. The Master made a sort of average and fixed the value at seven dollars per acre. We think this more than the proof shows the land to be worth, and that the exceptions of the defendants should have been sustained. There is a wide difference also as to the number of acres of land fit for cultivation and in a fair state of improvement, when Rozelle, the mortgagee, took possession. He says there was not to exceed two hundred and fifty acres fit for cultivation in 1874, when he took charge of the place, and that when he left, at the end of the second year, about four hundred and fifty acres.

3. MORT-GAGEE: Not liable for rents or improvements made by himself, and entitled to credit for necessary disbursements. R. H. Rozelle, who had charge of the place for George Rozelle, says that it contained between two hundred and seventy-five and three hundred acres when he first went to it, and that by actual survey, made by George Merrick, Rozelle cleared up and put in cultivation ninety-eight acres. He says that about twenty-five acres more at different times, he thinks, were added to it by Rozelle.

Some witnesses speak of this added land as having been once cleared up or "deadened," and that it was in a rough state of improvement when Rozelle went in, but that it had grown up in cane. From what is shown in an account attached as a part of the deposition of R. H. Rozelle, it appears that George F. Rozelle expended a considerable sum of money in making judicious and valuable improvements on the place. He is shown to have cleared up and put in cultivation ninety-eight acres. He built houses and made many improvements and thereby enhanced the value of the property. It was error to charge Rozelle, or those who claim under him as a mortgagee in possession, for rents of land put into cultivation by himself at his own cost. Somebody must have kept the taxes down and made repairs. No credit seems to have been given or estimate made of these necessary and proper disbursements. A mortgagee's account, as stated by Jones on Mortgages, is as follows: "Upon the redemption of the mortgaged premises by any one interested in them, he is obliged to state an account of his receipts from the mortgaged property, and he is entitled to allowances for all proper disbursements made by him in respect of the premises. The mortgagee in possession takes the rents and profits in the *quasi* character of a trustee or bailiff of the mortgagor. And in equity he must apply them as an equitable set-off to the amount due on the mortgage. It depends, however, upon the result of the accounting, upon equitable principles, whether any part of the rents and profits received shall be so applied. The mortgagee is entitled to have them applied in the first instance to reimburse him for taxes and necessary repairs made upon the premises, for sums paid by him upon prior incumbrances upon the estate and the cost in defending it; and if he has made permanent improvements upon the land in the belief that he was

the absolute owner, the increased value may be allowed him. *Jones on Mortgages, vol. 2, secs. 1114–15.*

The defendant's exceptions to the Master's report ought for these reasons to have been sustained. The decree of the Pulaski Chancery Court is reversed for the errors herein indicated, and the cause remanded to that court to be proceeded with according to the rules of that court, and according to this opinion, with directions to strike out plaintiff's first amendment to his complaint and to limit the relief to the other matters contained in the pleadings and embraced in the general or special relief prayed.

### DISSENTING OPINION.

MARTIN, Special Judge. I regret that I can not concur with my brother judges, altogether, in the able and exhaustive opinion delivered by the court in this case.

In so far as the opinion holds that the court below had jurisdiction, under the peculiar circumstances, to enjoin the sale made under the Jones, McDowell & Co. mortgages, to take an account as to the extinguishment thereof, and to settle the equities growing out of the partnership alleged in the defendant's answer, it has my concurrence. It seems to me, however, on this branch of the case, that, having all the parties before it, the court below would find it very embarrassing to make any satisfactory decree without going forward to make a final settlement of all matters, and a decree, if necessary, for the possession of the property in controversy. The court having in the first instance taken jurisdiction as to the injunction account and partnership, the other is necessarily drawn to it, as incidental, though independently, beyond its jurisdiction.

As well expressed by Chief Justice WATKINS, in *Price v. State Bank, 14 Ark., 56,* "a court of chancery having taken jurisdiction of a cause for one purpose, and having

all the parties in interest before it, will do complete justice between them and *end litigation* by disposing of all questions in the cause." *Estes v. Martin, 34 Ark., 410 ; Dyer v. Jacoway, ante, 186.*

### *Partnership.*

It seems to me the doctrine as stated by the court, or rather as applied to the facts of this case, is not sustainable either on principle or by the authorities. In my endeavor to convince myself that my brothers were correct, I have given a careful examination to all the cases cited in the opinion, so far as I am advised, in support of that doctrine. And, without discussing them separately, it may be said of them all, they simply lay down the rule to be, that where two partners holding partnership property agree to and do divide the property, or one conveys to the other, the conveyance severs the partnership claim, and the *grantor* or *vendor*, who has parted with his interest, has no further interest in the property, or equity to have the property so *conveyed away* by him subjected to the debts of the firm.

The language of the courts, I am aware, in some of the cases, is very broad; but when applied to the facts of the cases under consideration, the above is a fair statement of the rule as applied, and beyond that it becomes mere *dicta.*

Now a very slight glance at the facts in this case will serve to show that such a rule has no operation here.

For the purpose of discussing this branch of the case, it is necessary to advert to only a very few of the prominent facts. And, in view of the manner in which the question is raised here, it may be assumed, as is conceded in the argument on this point, that the partnership is established, and the land mentioned was *partnership property.* While such partnership property, Fletcher recovered a judgment

in Pulaski Circuit Court against Crad. Vaughan. This, by law, became a lien on all his real estate in the county, the land being then in Pulaski. Crad. Vaughan, one of the partners, subsequent to recovery of this judgment, conveyed to William R. Vaughan, his partner, " all his right, title and interest" in the lands. W. R. Vaughan in a few days conveyed to English, in settlement of a *claim against* the firm. English conveyed to Rozelle, and Rozelle to Adams. The lands, it may be stated, were bought in the names of William R. Vaughan and Craddock R. Vaughan, as though they were held as tenants in common, and so the records showed the title.

This I think, however, and we are agreed on that proposition, cuts no figure in the case. The decisions are abundant that equity will, as in favor of a *mere execution purchaser*, only inquire into the actual interest, and not what appears by the record of land titles or otherwise. *22 Ark., 580; 27 Ark., 101; 31 Ark., 258; 29 Ark.; 34 Ark., 92.*

The question which we have now to settle here is, simply, what interest in this land did Fletcher take by virtue of his execution.

It is evident, and not controverted by any of the able counsel, if the transfer from Crad. Vaughan to William R. had been made before the recovery of the judgment, Fletcher would have taken nothing. Then it must be by virue of the *lien* thus by the *judgment* fixed on the property, that he can recover, if at all.

The proposition of the court, speaking through the majority in this case, is, that this lien held the half interest of Crad. Vaughan, subject only to the equities growing out of the partnership, and of' firm creditors *to* be first satisfied; that by the conveyance of Crad. Vaughan all equities of creditors was destroyed by a severance of the estate. Thence Fletcher is let into this full half interest, acquit of

all such equities, and as though Crad. Vaughan were then a tenant in common of one half interest in the land.

Respectfully deferring to the good judgment of my brothers, I can not subscribe to this doctrine, and submit that a careful examination of the real question will show it not well founded. The question for solution, is, what did Fletcher get by his sale? He got what was fastened and saved by the lien. What was that?

Mr. Freeman, in his excellent work, says: "The judgment is a lien only on the *interest of the debtor*, whatever that may be; therefore, though he seems to have an interest, if he have none in fact, no lien can attach. The rights of a lien owner *can not exceed* those which might be acquired by a *purchaser from the defendant*, with full notice of all existing legal or equitable rights belonging to third parties. The attaching of the lien upon the legal title forms no impediment to the operation of all equities previously existing over the property. *Freem. on Judgment, secs. 357–357a.*

In *Parsons on Partnership*, *350, the rule is laid down thus: "The first point, therefore, is to adopt no theory and no conclusion that will offer to an attachment or execution *anything more or anything else than the debtor has.* * * One partner may sell to his copartner, but no such arrangement liberates his share from the debts of the firm. (*Ib., *p. 472.*) Real estate, while partnership property, fulfills all the functions of personalty; *when divided between them* the character of real estate remains.

In *Tallman v. Forly, 1 Barb., 280,* Tallman sold a lot to Forly, Forly, at the time of conveyance, executing a mortgage for the purchase money, and also mortgage to DeAlfero to secure him for moneys advanced in improving the property. Judgments were then outstanding against Forly. Tallman afterward foreclosed, and the property was sold for more than enough to satisfy the claim for pur-

chase money, and the *prior* judgment creditors applied to have surplus turned over to them. The court held the surplus went to mortgagors, and said:

"Judgment creditors are entitled only to such rights as *the debtor has.* \* \* If the creditors could find a *moment* of time when the *debtor had a right to sell* in preference to secured mortgagees, they might find some aliment on which their claim might feed."

In *Watkins v. Wassell*, 15 *Ark.*, this court say: "The interest of the creditor in the real estate of the debtor is limited to the actual interest of the debtor at the time the lien (of the judgment) attaches."

In 27 *Penn. St.*, 212, *Jones v. Jones*, thus: "When the interest of one partner passes to another it is immaterial whether by sale, descent, *execution*, or assignment in bankruptcy, in all these cases the person coming in by right of the partner, comes into nothing more than an interest in the partnership, which can not be tangible; can not be made available or delivered but under an account between the partnership and the partner, and it is an item in the account that enough must be left for debts."

In *Northern Bank of Kentucky v. Keiser*, *Ky.*, the rule is thus stated: "No individual creditor of any of the partners can subject *his debtor's* interest otherwise than *cum onere*, or, in other words, could not make his debtor's interest available until all *partnership debts shall have been paid.*"

Mr. Waits states it thus (6 *Waits' Acts and Defenses, pp.* 745-6): "The purchaser must accept the debtor's position as to liabilities, legal or equitable, existing either as incumbrances or as incidents to the title." And, further, at *page* 753: "The right of a separate partner in the *corpus* of the firm property, is simply his proportionate share after the *firm debts are paid*," with a large number of author-

ities cited. *Sutcliff v. Derhman, 18 Ohio, 182; 8 N. H., 251; 41 Iowa, 39; Offert v. Scott, 32 Ala., 167; 71 Penn., 488; 35 Vt., 44; 28 Ala., 629.*

The books are full of authorities on this point, and to the same effect. That is, that the creditor can not take by his judgment lien, or execution, more than the debtor might, at the time it attaches, or is enforced, sell or convey.

Now it does seem to me, my brother judges can not, in consistence with this plain principle, hold that Fletcher's judgment lien, or sale under it, can possibly take more than Crad. Vaughan's interest, subject to the debts of the partnership. There might be more reason for holding that he, as judgment creditor of William R. Vaughan, would have fastened his lien on the property. But how it is to be sustained as to Crad. Vaughan's interest is difficult to comprehend.

Before Crad.'s conveyance to Wm. R., Fletcher had a lien, if anything, on his *equitable right to an account from the partnership for his surplus.* The *corpus* of the firm property belonging, as Mr. Parsons says, to the partnership as distinguished from either partner separately. When Crad. Vaughan conveyed, "whatever interest, right and title" he had, went to William R., subject to *this lien.* Lien for what? Evidently a right to have his debt satisfied out of Crad. Vaughan's *surplus* in the property—only this, and nothing more.

But, it is argued, when the Vaughans made this transaction, they severed the partnership and opened it up to all creditors alike.

The most that any of the authorities have held in this direction is, that when such conveyance is made the property is subject to the individual debts of the separate partners to whom the *conveyance is made.*

The court has considered the result precisely the same as

if William R. and Crad. Vaughan had divided the estate, each conveying to the other a one-half interest. This might well be claimed to have the effect of giving a new vitality and extended sweep to Fletcher's lien, by which he could take all that Crad. got by the conveyance, as well as what he had before.

But here we have adopted the simple legal proposition that a conveyance *away from* the debtor to a third party has vastly enlarged the interest he had before, and thereby enabled his execution creditor to take instead of a mere empty "equity for an account," an estate worth thousands of dollars. If the deed of Crad. Vaughan was efficacious to sever the joint estate of the partnership, that effect could only succeed the cause which produced it. The severance would take effect *after* the transmutation of the estate passed thereby, and hence *after* the *vesting* in William R. Vaughan of all the estate it was possible for Crad. Vaughan to convey. And hence after the conveyance it simply left Fletcher in an attitude by virtue of his lien (if worth anything) to demand that the interest Crad. Vaughan had before his transfer, his claim to the surplus, should be subjected to the payment of his debt. And he might have brought all parties in interest into a court of equity and had an accounting to show what he could take by that right.

This, it seems to me, is all that he could possibly claim by virtue of his lien, if, as I said, he had any lien at all. There are many authorities denying that any lien attaches in such cases to partnership property. That is, that any lien would attach until the severance of the estate; and here the severance was affected by a transfer of all interest he could transfer from Fletcher's debtor to the other partner. It is very certain there was never any time in which Crad. Vaughan could himself have conveyed a half interest in

these lands to a third party. For these grounds, briefly stated, I can not assent to so much of the opinion as relates to the effect of this transfer. I think that W. R. Vaughan had an obvious equity to appropriate this property to the payment of partnership debts, and, having done so, the most in any court Fletcher could demand, would be to have it uncovered to satisfy his lien, and that only on payment of the debt which this interest went to satisfy.

William R. Vaughan, through the conveyance to himself and from himself to English, simply accomplished his equity to have the assets applied to payment of firm debts. He no longer, after the conveyance by C. R. Vaughan, required any lien to support his conveyance to English, for he had the legal estate all vested in him, and nothing remained except as above stated, possibly the equity of Crad. Vaughan passed to Fletcher by his purchase, to have an account taken and get the *surplus after payment of all firm debts.*